C. DENNIS LOOMIS (SBN: 82359)
    E-Mail: cdloomis@buchalter.com
AARON LEVINE (SBN: 299260)
    E-Mail: alevine@buchalter.com
LAUREN JACOBS (SBN: 335265)
    E-Mail: ljacobs@buchalter.com
BUCHALTER, A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Telephone: 213.891.0700
Fax: 213.896.0400

Attorneys for Plaintiff,
JANGLE VISION, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANGLE VISION, LLC., a California limited liability company,<br><br>        Plaintiff,<br><br>    vs.<br><br>ALEXANDER WANG INCORPORATED, a Delaware Corporation; ALEXANDER WANG, an individual; and DOES 1 through 10, inclusive<br><br>        Defendants. | Case No. 2:21-cv-9964-GW-Ex<br><br>**FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 101, *etc.***<br><br>    **<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Jangle Vision, LLC ("Plaintiff" or "Jangle Vision"), by and through its attorneys, hereby alleges as follows:

**PARTIES**

1.      Plaintiff is, and at all times pertinent to this action has been, a limited liability company duly organized and existing under the laws of the State of California, and having its principal place of business at 225 S. Gale Drive # B, Beverly Hills, California 90211.

2.      Plaintiff is informed and believes, and on that basis alleges, that defendant Alexander Wang Incorporated ("AWI") is, and at all times pertinent to this action has been, a foreign corporation duly organized and existing under the laws of the State of Delaware with a place of business at 386 Broadway, Third Floor, New York, New York 10013.  Plaintiff is further informed and believes, and on that basis alleges, that AWI is an internationally recognized designer of upscale, high fashion apparel and accessories, including luxury handbags, and is the owner and operator of upscale retail stores and store-in-stores under the brand name "Alexander Wang."  At all times material hereto, AWI has operated its Instagram page at the URL: www.Instagram.com/alexanderWangNY and has operated its Facebook page at the URL: www.Facebook.com/AlexanderWangNY.

3.      Plaintiff is informed and believes, and on that basis alleges, that Defendant Alexander Wang ("Mr. Wang") is an individual and resident of the State of New York.  Plaintiff is further informed and believes, and on that basis alleges, that Mr. Wang is a world-famous fashion designer and the Co-Founder, Chairman, and Creative Director of AWI.  At all times material hereto, Mr. Wang has operated his Instagram page at the URL: www.Instagram.com/alexwangny.  (AWI and Mr. Wang will sometimes be referred to collectively as "Defendants.")

4.      Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants sued herein under the fictitious names DOES 1 through 10, inclusive, and therefore sues such

**FIRST AMENDED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 49451023v4

defendants by such fictitious names.  Plaintiff will amend this complaint to allege the true names and capacities of said fictitiously named defendants when their true names and capacities have been ascertained.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously named "DOE" defendants are legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by Plaintiff.

5.     Plaintiff is informed and believes, and on that basis alleges, that all defendants, including the fictitious DOE defendants, were at all relevant times acting as actual agents, captive agents or brokers, conspirators, ostensible agents, partners, brokers and/or joint venturers, and/or employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy and/or enterprise, and with the express and/or implied permission, knowledge, consent, authorization, and ratification of their co-defendants; however, this allegation is pleaded as an alternative theory wherever not doing so would result in a contradiction with other allegations.

6.     Plaintiff is informed and believes and on that basis alleges that at all times herein mentioned, there was a unity of interest and ownership between Mr. Wang and AWI such that the individuality and separateness between them ceased to exist if in fact it ever existed; Mr. Wang used assets of AWI for his own purposes, and assets of AWI and Mr. Wang were otherwise commingled; at all relevant times, Mr. Wang controlled AWI; Mr. Wang used AWI as a vehicle for conducting his personal business; and Mr. Wang so managed and controlled AWI that it would sanction fraud and promote injustice if he were not held responsible for the obligations of AWI.

## JURISDICTION AND VENUE

7.     This is an action for federal copyright infringement under 17 U.S.C. §§ 101 *et seq.*

8.     This Court has jurisdiction over the subject matter of this lawsuit pursuant to, *inter alia*, 28 U.S.C. § 1331 and 1338(a).

9.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Jangle Vision and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest.

10.     This Court has personal jurisdiction over Defendants because they have systemic and continuous contacts with the State of California, including by having formed businesses that serve and target customers who reside in the State of California.  Further, Defendants have committed acts of copyright infringement, and the other acts complained of herein, in this judicial district.  Venue is proper in the Central District under 28 U.S.C. § 1391(b)(2) and (d).

## FACTUAL ALLEGATIONS

11.     Jangle Vision is a multi-faceted art and design house focusing on the intersection of art and design in real world and technical applications, based in Beverly Hills, California.  Claudia D. Messica, aka Claudia Diroma (hereinafter "Ms. Diroma"), is Plaintiff's Managing Member, creator, and artistic driving force.

12.     Commencing in or around 2015, and continuing thereafter, Ms. Diroma created a series of original, visually arresting, highly distinctive two-dimensional drawings, animated video clips and related graphical works collectively identified as the "Jangle Vision Twins" works.  The central element of the Jangle Vision Twins collection of works are androgynous-presenting female characters that are readily distinguishable and immediately identifiable by, among other details, the lithe, angular, elongated shape of their bodies, their unnatural postures and their skin-like full body coverings, revealing only their eyes and mouth through openings in the face of the skin.  The Jangle Vision Twins characters body coverings, and other images and designs in the Jangle Vision Twins works, are presented in a collection of nine specific colors (the "Jangle Vision Palette") chosen by Ms. Diroma.  Each color in the Jangle Vision Palette

**FIRST AMENDED COMPLAINT**

represents a different totem within the Jangle Vision brand.  Each of the colored skins is symbolic of the changing chameleon-like "skins" that women, out of necessity or social pressure, take on in their daily lives.

13.  The Jangle Vision Twins works are original to Ms. Diroma and are copyrightable subject matter.  By an Amended Assignment of Copyright made effective as of August 31, 2020, Ms. Diroma assigned all exclusive worldwide rights, title and interest in and to the Jangle Vision Twins works, including the copyrights thereto and all accrued rights to sue for infringement, to Plaintiff.  In 2020, Plaintiff obtained the following United States Copyright Registrations for works featuring the Jangle Vision Twins characters and associated images:

a.  Plaintiff is the owner of United States Copyright Registration No. PA 2-261-827 for its motion picture entitled Jangle Vision Video.  The date of first publication of this registered work is April 3, 2018.  The effective date of this registration is September 07, 2020.  A copy of the United States Federal Copyright Certificate of Registration for this motion picture is attached hereto as **Exhibit A** and incorporated herein by this reference.

b.  Plaintiff is the owner of United States Copyright Registration No. VA 2-223-013 for its two-dimensional artwork entitled Jangle Twin Series.  The date of first publication of this registered work is June 30, 2018.  The effective date of this registration is September 07, 2020.  A copy of the United States Federal Copyright Certificate of Registration and of the deposit copy for this work is attached hereto as **Exhibit B** and incorporated herein by this reference.

14.  In December 2021, Plaintiff obtained the following United States Copyright Registrations for additional works featuring the Jangle Vision Twins:

a.   Plaintiff is the owner of United States Copyright Registration No. VA 2-277-857 for its two-dimensional artwork entitled Jangle Vision Numbered Dot Comic Pixel.  The date of first publication of this registered work is December 8, 2018.  The effective date of this registration is December 3, 2021.  A copy of the United States Federal Copyright Certificate of Registration and the deposit copy for this work is attached hereto as **Exhibit C** and incorporated herein by this reference.

b.   Plaintiff is the owner of United States Copyright Registration No. VA 2-277-862 for its two-dimensional artwork entitled Jangle Vision 4D Scribble Villains.  The date of first publication of this registered work is December 8, 2018.  The effective date of this registration is December 3, 2021.  A copy of the United States Federal Copyright Certificate of Registration and the deposit copy for this work is attached hereto as **Exhibit D** and incorporated herein by this reference.

c.   Plaintiff is the owner of United States Copyright Registration No. VA 2-277-867 for its two-dimensional artwork entitled Jangle Vision Neon Mixtape Series.  The date of first publication of this registered work is December 8, 2018.  The effective date of this registration is December 3, 2021.  A copy of the United States Federal Copyright Certificate of Registration and the deposit copy for this work is attached hereto as **Exhibit E** and incorporated herein by this reference.

d.   Plaintiff is the owner of United States Copyright Registration No. VA 2-277-866 for its two-dimensional artwork entitled Jangle Vision New World Series.  The date of first publication of this registered work is December 16, 2018.  The effective

**FIRST AMENDED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 49451023v4

1    date of this registration is December 3, 2021.  A copy of the

2    United States Federal Copyright Certificate of Registration and

3    the deposit copy for this work is attached hereto as **Exhibit F**

4    and incorporated herein by this reference.

5        e.    Plaintiff is the owner of United States Copyright Registration

6    No. VA 2-277-858 for its two-dimensional artwork entitled

7    Jangle Vision American Pixel.  The date of first publication of

8    this registered work is December 8, 2018.  The effective date of

9    this registration is December 3, 2021.  A copy of the United

10    States Federal Copyright Certificate of Registration and the

11    deposit copy for this work is attached hereto as **Exhibit G** and

12    incorporated herein by this reference.  (The registered Jangle

13    Vision Twin works identified in Exhibits A through G shall

14    sometimes be collectively referred to herein as the "Registered

15    Works.")

16        15.    Representative images of some of the Registered Works are set forth

17    herein below:




BUCHALTER
A Professional Corporation
Los Angeles

BN 49451023v4

7

**FIRST AMENDED COMPLAINT**



16.     On or around November 26, 2018, Ms. Diroma submitted an online application to AWI for a position as a graphic designer.  Shortly thereafter, Ms. Diroma also entered an online contest to be authorized to photograph one of AWI's runway shows.  In connection with these applications Ms. Diroma delivered to Defendants representative examples of work from her artistic portfolio, and a link to her Jangle Vision website that displayed some of the Jangle Vision Twins works that she had completed up to that time.

17.     On December 4, 2018, Ms. Diroma was contacted via telephone by Juno Kim, a Talent Acquisition Consultant for Defendants.  They had two substantive conversations on that date, the first for ten minutes, the second for twenty-nine minutes.  During the first conversation, Mr. Kim confirmed that Defendants received a copy of Ms. Diroma's application and artistic portfolio, told her that her work and résumé stood out from the other applicants, and inquired further regarding Ms. Diroma's interest in the available graphic designer position.  The two discussed Ms. Diroma's professional background and salary requirements, before Mr. Kim shifted to the Jangle Vision Twins works, which he praised effusively.

18.     During the second conversation on that date, the Jangle Vision Twins works was the central focus of Mr. Kim's inquiries.  He solicited information from Ms. Diroma regarding her inspiration for creating the characters.  Ms. Diroma told Mr. Kim that the twins, which she had been working on for nearly seven years,

**FIRST AMENDED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 49451023v4

embodied her artistic alias and served as the central focus and face of Ms. Diroma's creative outlet, the Jangle Vision brand.  She explained that the different colored skins in the Jangle Vision Palette worn by the Jangle Vision Twins were designed to evoke the Universal Woman, wearing many "skins" during her daily life and constituting different totems within the Jangle Vision brand.  She also explained that the Jangle Vision Twin character was, in many works, purposefully framed within circular structures to visually communicate the differing environments within which women are framed during their daily lives, another core theme of the Jangle Vision brand that extends the symbolism of the different colored skins.

19.    After their second conversation, Mr. Kim told Ms. Diroma that she needed to provide Defendants with additional character designs before her application could be considered by Defendants.  He advised her that Defendants were very difficult to please, and as such, the additional materials, which he requested should include more of the Jangle Vision Twins works and should be collected on a stand-alone page on Ms. Diroma's website specifically tailored for review by Defendants and its design team.

20.    At no point did Mr. Kim ever inform Ms. Diroma that the submitted materials would be used by Defendants for any purpose other than to confidentially evaluate Ms. Diroma's qualifications for the open designer position.  Similarly, Ms. Diroma never provided Mr. Kim or anyone else at Defendants with approval for Defendants to utilize the submitted materials for any purpose other than to consider her qualifications for the position.

21.    On December 8, 2018, Ms. Diroma received a text message from Mr. Kim requesting that the specially prepared materials be transmitted to Defendants by email to Mr. Kim through both his personal and AWI email addresses.  Wanting to make a good impression, Ms. Diroma did exactly what was requested, and later that evening, Ms. Diroma sent Mr. Kim an email containing the requested materials, including a new link to the specially curated Jangle Vision website

**FIRST AMENDED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES
BN 49451023v4

created for Defendants' review.  This transmittal included several Jangle Vision
Twins works that Ms. Diroma had completed earlier in December and that had
never previously been displayed privately or publicly.  All but one of the seven
Registered Works was displayed in the materials that Ms. Diroma delivered to
Defendants on December 8, 2018.  On December 16, 2018, Ms. Diroma made the
sixth Registered Work (see Exhibit F) available to Defendants by uploading it to
the janglevision.com website.

22.     Shortly after transmitting the email, Ms. Diroma contacted Mr. Kim
asking that he confirm his receipt of the submitted materials.  Mr. Kim never
responded to this inquiry.  Similarly, neither Mr. Kim, nor any other representative
from Defendants, ever contacted Ms. Diroma about the job she applied for or
contest that she entered.

23.     Plaintiff has learned that in only the three weeks immediately
following Ms. Diroma's private delivery to Defendants of the materials described in
paragraph 21 above, the number of unique page views to the janglevision.com
website increased by more than 300% compared to the web traffic received in the
entire preceding month.  Then, following this three-week spike, the visitors to the
janglevision.com website dropped precipitously, returning to and remaining for the
remainder of 2019 at the levels that had prevailed before delivery of Ms. Diroma's
materials to Defendants.  Plaintiff is informed and believes, and on that basis
alleges, that this unprecedented temporary spike in traffic to the jangelvision.com
website was the result of hundreds of views of that content by Mr. Wang and other
employees and agents of Defendants, and design professionals acting on behalf of
Defendants, who were exhaustively examining and copying the content provided by
Ms. Diroma on December 8, 2018.

24.     Having heard nothing at all from Defendants after her final submission
of specially selected artwork to Defendants on December 8, 2018, Ms. Diroma was
surprised, eighteen months later, to receive an automated notification from the

**FIRST AMENDED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 49451023v4

LinkedIn system on July 1, 2020, that Mr. Kim had viewed her LinkedIn profile. Plaintiff is informed and believes and on that basis alleges that Mr. Kim was no longer employed by Defendants at that time, having taken different employment many months before.

25.     Then, several hours later on that same date, Ms. Diroma received multiple contacts from friends and associates familiar with her Jangle Vision Twins works, advising her that a video clip advertisement displaying 3D animated versions of the Jangle Vision Twins had been posted on Defendants' Instagram page – with approximately 5.4 million followers – promoting Defendants' line of luxury, high priced "rhinestone" designer handbags.  Each handbag in Defendants' rhinestone product line is distinguished by the exterior of the bag being completely covered with affixed rhinestones.

26.     The advertisement consists of an approximately twenty-second long video featuring two androgynous-presenting female characters which are substantially similar to the Jangle Vision Twins character design.  These similarities include lithe, angular, elongated bodies in unnatural postures, in pink skin-like full-body coverings revealing only their eyes and mouth through openings in the face of the skin.  Also substantially similar to expressive elements in the Registered Works, the female characters in Defendants' advertisement were framed within circular environments.  Specifically, they were depicted lounging in a round martini-glass-shaped pool.  (These animated characters will be referred to collectively herein as the "Infringing Characters.")

27.     As the ad continues, the camera pans out to reveal additional Infringing Characters lounging in similar circular pools.  The animated display progressively evolves to reveal that the pools populated by Infringing Characters are not pools at all, but rather, are individual rhinestones on the advertised rhinestone handbag.  A representative image from Defendant's Instagram ad,

**FIRST AMENDED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 49451023v4

posted July 1, 2020, and available through Defendant's Instagram page at least through August 2021, is set forth herein below:



28.     Ms. Diroma also discovered that the above-described advertisement was posted on July 1, 2020, to Defendants' Facebook page, which at that time was followed by approximately 830,000 people.

29.     Moreover, Mr. Wang posted the same advertisement to his personal Instagram account, which at that time was followed by approximately 435,000 people.

30.     Thereafter, on July 2, 2020, Ms. Diroma discovered that a second advertisement featuring Infringing Characters was posted on Defendants' Instagram page.  Like the first advertisement, the second advertisement was a video clip, which prominently featured Infringing Characters framed lounging within circular martini-glass-shaped pools, which were revealed to be rhinestones on Defendants' handbag.  A representative image from this advertisement is set forth below:

/ / /

31.     These animated characters and how they are displayed in these animated advertisements embody and display multiple identifiable expressive elements that are taken from and that are substantially similar to corresponding elements of original copyrighted artistic authorship embodied and displayed in the Registered Works, including but not limited to the substantially similar elements that are discernable in the images excerpted from Defendants' animated characters and animated advertisements reproduced in this Complaint and its Exhibits.  These advertisements, therefore, constitute unlawful derivative works that infringe the Registered Works.  (These advertisements will sometimes be referred to collectively herein as the "Infringing Ads.")

32.     The Infringing Ads were continuously presented to the public in multiple iterations through Defendants' social media platforms, which are accessed by tens of millions of individual consumers throughout the United States and throughout the world, from July 1, 2020 through at least August 2021.  These social media advertisements routinely included links taking the viewer to a site at which the advertised rhinestone handbag products could be viewed and purchased.  An image of the handbag as displayed and offered for purchase, and two still images

excerpted from Infringing Ads published on Defendants' social media, are reproduced below:

33.    In addition to the Infringing Ads, Ms. Diroma also learned that Defendants presented the Infringing Characters in a targeted email advertisement



first sent to Defendants' customer database on July 1, 2020, featuring a still image from the advertisement identified in paragraph 30 above.  This blast email advertisement includes links that redirect potential customers to Defendants' website where they could purchase the identified bag.  (This email campaign will be referred to as the "Infringing Email.")

34.    Plaintiff is informed and believes, and on that basis alleges, that the Infringing Ads were also prominently displayed on "point of sale" video monitors and signage within Defendants' retail stores and store-in-stores, both in the United States and throughout the world.

35.    Defendants' unlawful and infringing copying and public, commercial use and display of copyrighted expression created and embodied in Plaintiff's Registered Works actually predates the Infringing Characters, the Infringing Ads and the Infringing Email.  In or about January 2020, Defendants created and published online in the United States and internationally, a video clip displaying a gelatin mold styled in the general form of a U.S. flag, with the colored lines and fields presented in rows of dots or pixels (the "Infringing Flag Design").  Defendants further manufactured and sold sweatshirts and other garments

displaying the Infringing Flag Design on the garment or labels affixed to the garment.  The Infringing Flag Design is substantially similar to and infringes the copyrighted expression contained in the registered Jangle Vision American Pixel work (see Exhibit G).  The Infringing Flag Design and the Jangle Vision American Pixel work are reproduced below:





36.    Plaintiff is informed and believes, and on that basis alleges, that Defendants' unauthorized copying from the Registered Works and the transformative impact of Defendants' exposure to those Registered Works on Defendants' branding and marketing themes and paradigm is further revealed from

an even earlier point in time in video and still images created and published by Defendants in print ads and billboards in Japan, and also published on Defendants' social media sites available in the United States and around the world, in and after November 2019, in connection with Defendants' advertising and promotion of a marketing collaboration with a prominent Japanese department store. These include a still image displaying a woman's leg and arm covered in colored skin, and a video clip displaying a woman's leg covered in colored skin, that evokes and are inspired by the Jangle Vision Twins characters. These images are shown below:

37.     Plaintiff is informed and believes, and on that basis alleges, that prior to Defendants' July 2020 launch of the massive online marketing campaign of the Infringing Ads and Infringing Email promoting Defendants' rhinestone handbag line, Defendants had been marketing, promoting and selling identical or substantially similar rhinestone-studded luxury handbags since not later than January 2020. Plaintiff is further informed and believes, and on that basis alleges, that after, and as a direct, proximate consequence of, the July 2020 launch and continuing presentation of the Infringing Ads and Infringing Email, the sales ~~of Defendants'~~ of Defendants' rhinestone handbags dramatically increased.

38.     Before Defendants' infringing ad campaign began in July 2020, Defendants offered two rhinestone handbag styles and one rhinestone embedded shoe design. Plaintiff is informed and believes, and on that basis alleges, that Defendants further exploited the massive consumer interest in the rhinestone handbag line created by the Infringing Characters, the Infringing Ads and the Infringing Email to expand its line of rhinestone handbags from two to seven distinct styles, at retail prices as high as $1,895 per product, and to add additional high-priced rhinestone-embedded products to its product offerings, specifically, satin pouches with rhinestone embedded handles, rhinestone knot earrings, and rhinestone embedded nylon pouches, slippers, sandals and bracelets.

**FIRST AMENDED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 49451023v4

39.    The registered Jangle Vision work entitled "Jangle Vision Neon Mixtape Series" (see Exhibit F) consists of nine panels, each depicting the face of a Jangle Vision Twin within a circular frame.  On eight of the nine panels, starting with the panel second from the left, the respective Jangle Vision Twin image is set against a background displaying one of eight specific colors included in the Jangle Vision Palette.  The registered Jangle Vision Neon Mixtape work is displayed below:



40.    The ninth Jangle Vision Palette color, a particular shade of light blue, is displayed in the second character from the right in the registered work entitled "Jangle Vision 4D Scribble Villains" (see Exhibit D, and see that image reproduced in paragraph 15 above).

41.    Defendants' additional styles and models of rhinestone handbags and their additional ancillary rhinestone embedded products are offered in a collection of nine separate colors that exactly copy and consist of each of the nine specific colors that comprise the copyrighted Jangle Vision Palette, and no other color or colors.  This unauthorized appropriation and copying of the entire Jangle Vision Palette constitutes willful copyright infringement.  Defendants further exploited and infringed the registered Jangle Vision Palette by adding new products in the same nine colors without rhinestone accents.  (These new product offerings will sometimes be referred to collectively as the "Spin-Off Products.")  A collection displaying each of the registered Jangle Vision Palette colors with examples of Defendants' Spin-Off Products duplicating each respective color is attached hereto as **Exhibit H** and incorporated herein by this reference.

**FIRST AMENDED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 49451023v4

42.     Defendants built upon, and further commercially exploited the acceptance among its customer base of, and the commercial success created by, the Infringing Characters, Infringing Ads and Infringing Email to create, publish and commercially exploit additional advertisements featuring lithe female figures clad in black "skins" in exotic poses, which are substantially similar to and infringe those expressive elements of the Jangle Vision Twins characters, holding, wearing or displaying Defendants' rhinestone handbags or other Spin-Off Products.

43.     Plaintiff is informed and believes, and on that basis alleges, that Defendants' misappropriation of Plaintiff's post-modern, universal, chameleon "Universal Woman" manifested in the Registered Works and unlawfully copied in the Infringing Characters became the cornerstone of Defendants' entirely new branding concept and paradigm for not only the rhinestone handbag line and the Spin-Off Products, but for Defendants' entire fashion apparel and accessory collection.  Plaintiff is informed and believes, and on that basis alleges, that the keystone of Defendants' brand-building efforts was the social media campaign launched in July 2020 with the Infringing Ads and augmented with paid advertising on Instagram and Facebook incorporating the content from the Infringing Ads.

44.     Plaintiff is informed and believes, and on that basis alleges, that a uniquely valuable element of such social media advertising to the advertiser is the wealth of data captured and analyzed by the media platforms about each unique visitor who views the given ad and is then tracked with each further visit.  This data enables the advertiser to identify content that produces particularly strong responses, to target additional advertising to the interested consumers, to tailor further advertising to reinforce and increase the consumer's interest in the advertiser's brand, and ultimately to convert the consumer's interest into product purchases.  The system works like a funnel and is successful to the extent that an advertisement with compelling, exciting, groundbreaking content is at the top of the funnel, drawing consumers into the funnel and then producing not only sales of the

**FIRST AMENDED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 49451023v4

particular product featured in that ad, but all of the ancillary and extremely valuable benefits described above, including further product sales and brand enhancement.

45.     Plaintiff is informed and believes, and on that basis alleges, that the Infringing Ads were the perfect vehicle to be at the top of Defendants' funnel. Plaintiff is further informed and believes, and on that basis alleges, that Defendants expended hundreds of thousands of dollars, or more, over more than one year in paid social media advertising featuring the Infringing Ads, Infringing Characters and other infringing content.  Plaintiff is informed and believes, and on that basis alleges, that this paid social media advertising has reached over one billion users of the Facebook and Instagram platforms worldwide.

46.     Plaintiff is informed and believes, and on that basis alleges, that as a direct, proximate consequence of all of the infringing activity alleged above, Defendants' overall product sales and brand recognition and value has increased by huge margins.

## FIRST CLAIM FOR RELIEF

## (Federal Copyright Infringement Under 17 U.S.C. §§ 101 et. seq.

## -   Against Defendants and DOES 1-10, Inclusive)

47.     Plaintiff realleges and incorporates here by this reference each of the allegations set forth in paragraphs 1 through 46 hereof, inclusive, as if fully set forth here.

48.     Plaintiff is the owner of all worldwide right, title and interest in and to each and all of the Registered Works.

49.     Defendants had full and complete access to and knowledge of the Registered Works, in that Defendants affirmatively solicited, sought out and received complete copies of all Jangle Vision Twins works, specifically including all of the Registered Works, from Ms. Diroma under the pretense of considering her for employment as a designer by AWI.  Defendants have never been given any consent, permission, authorization or license from Ms. Diroma or from Plaintiff to

use, display, create derivative works based on, or otherwise exploit the Registered

Works, or any component or element thereof.

50.     Plaintiff is informed and believes, and on that basis alleges, that

Defendants since July 2020 have knowingly, willfully and flagrantly infringed

Plaintiff's Registered Works by creating, reproducing, publicly displaying and

otherwise commercially exploiting the Infringing Characters in the Infringing Ads,

the Infringing Email and in other displays and uses, each of which prominently

includes expressive elements that are substantially similar to and copied from the

Registered Works, including by blast email delivery to Defendants' customer and

prospect databases, continuous presentation on Defendants' multiple social media

platforms, paid promotional displays on multiple social media platforms, and by

other means and media throughout the United States and the world.

51.     Plaintiff is informed and believes, and on that basis alleges, that

Defendants have used and relied upon the Infringing Characters, the Infringing Ads

and the Infringing Emails as the cornerstone and central component of their

promotion, marketing and advertising of Defendants' rhinestone line of exclusive,

luxury handbags.  The signature design element of all of the rhinestone bags is a

handbag completely covered with affixed rhinestones.  The Infringing Ads and

Infringing Email, by design, indelibly conflate and merge in the perception of the

viewing consumer the highly distinctive, ultra-modern, memorable Jangle Vision

Twins images, unlawfully reproduced as the substantially similar Infringing

Characters, by displaying the Infringing Characters in circular pools, intentionally

meant to invoke the same circular environment in which Ms. Diroma presented the

Jangle Vision Twins in several of the Registered Works, which morph via

animation into a field of rhinestones, or which are displayed in still images of a

field of rhinestones with Infringing Characters visible in many of the rhinestones.

These dynamic and still images in the Infringing Ads also copy and are

substantially similar to expressive content in the registered "Jangle Vision

**FIRST AMENDED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 49451023v4

1    Numbered Dot Comic Pixel" work (see Exhibit D, and see that image reproduced in

2    paragraph 15 above).

3        52.    Plaintiff is informed and believes, and on that basis alleges, that the

4    purposeful correlation and integration of the Jangle Vision Twins design with the

5    rhinestone bag product line created by the Infringing Characters, the Infringing Ads

6    and the Infringing Email has directly, extensively, uniquely and unjustly increased

7    Defendants' sales and profits from the rhinestone bag line.

8        53.    Plaintiff is further informed and believes, and on that basis alleges,

9    that, building on the popularity and success of the rhinestone bag line generated by

10    Defendants' infringing misuse of the Infringing Characters, the Infringing Ads and

11    the Infringing Emails, Defendants have added the Spin-Off Products, in a collection

12    of colors that exactly copies and infringes the registered Jangle Vision Palette (see

13    Exhibits E and F, and see the images reproduced in paragraph 15 and paragraph 39

14    above) which have generated additional unjust sales and profits.

15        54.    Defendants' acts of copyright infringement as alleged above were, and

16    continue to be, willful, intentional and malicious.

17        55.    As a direct, proximate and intended consequence of their creation, and

18    their massive publication and display for more than one full year, of the Infringing

19    Characters, the Infringing Ads and the Infringing Email, Defendants have realized

20    unjust, unlawful and unfair revenues and profits, including sales of the rhinestone

21    bags and the Spin-Off Products, as well as enhanced consumer recognition and

22    brand value of Defendants' brand and associated good will.  Plaintiff is entitled to

23    disgorgement of Defendants' unjust profits and gains attributable to the

24    infringement of the Registered Works in an amount according to proof, but believed

25    to be not less than $75 million in profits and gains realized from product sales in the

26    U.S. that are allocable and attributable to Defendants' infringement of the

27    Registered Works.

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 49451023v4

21

**FIRST AMENDED COMPLAINT**

56.     In addition, Defendants' unauthorized publication of the Infringing Characters as alleged above throughout the U.S. and the world for over one year has directly and proximately injured and damaged Plaintiff by misappropriating the essence, the themes and the visual elements of the entire portfolio of Jangle Vision works, concept and brand, specifically including the Registered Works, which Plaintiff has never made commercially available to the public.  By saturating social media and other channels of communication with the Infringing Characters, the Infringing Ads and the Infringing Emails, Defendants have interfered with and effectively preempted Plaintiff's opportunity to commercially develop and exploit the Jangle Vision Twins works and concept for Plaintiff's own account.  Among other negative, damaging consequences, Defendants' massive publication of the Infringing Characters has preempted and diminished if not destroyed the market for Plaintiff to sell the Registered Works as well as limited edition prints, posters and other reproductions of those works.  Plaintiff has suffered actual damages as a direct, proximate consequence of Defendants' infringement in an amount according to proof, but believed to be not less than $6 million.

57.     Plaintiff is without an adequate remedy at law, and will suffer irreparable harm and injury unless Defendants' acts of copyright infringement are enjoined as prayed herein, in that Defendants threaten to and will, unless enjoined, continue to infringe Plaintiff's copyrights and the amount of the economic harm that will be suffered by Plaintiff from such continuing infringement will be extremely difficult to ascertain.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment as follows:

1.     That Defendants be adjudged to have willfully infringed upon Plaintiff's Registered Works in violation of 17 U.S.C. § 106 and 508.

2.     That Defendants and their agents, officers, directors, servants, employees, attorneys, successors and assigns, and all others in active concert or

**FIRST AMENDED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 49451023v4

participation with Defendants be preliminarily and permanently enjoined from directly or indirectly infringing Plaintiff's copyrights in the Registered Works.

3.      That Defendants, and each of them jointly and severally, be ordered to disgorge to Plaintiff the unjust revenues and profits realized by Defendants as a direct and proximate consequence of Defendants' copyright infringement, in a sum according to proof, but believed to be not less than $75 million.

4.      That Plaintiff be awarded against Defendants, and each of them jointly and severally, the actual damages suffered by Plaintiff as a direct and proximate consequence of Defendants' copyright infringement, in a sum according to proof, but believed to be not less than $6 million.

5.      For costs of suit incurred herein, including reasonable attorneys' fees, as allowed by law;

6.      For pre-judgment interest as allowed by law; and

7.      For such other, further and different relief as the Court may deem just and proper.


DATED:  February 7, 2022            BUCHALTER
                                    A Professional Corporation


                                    By: _____
                                        C. DENNIS LOOMIS
                                        AARON LEVINE
                                        LAUREN JACOBS

                                        Attorneys for Plaintiff
                                        JANGLE VISION, LLC

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury of all claims triable by jury.

DATED:  February 7, 2022

BUCHALTER
A Professional Corporation

By:_____

C. DENNIS LOOMIS
AARON LEVINE
LAUREN JACOBS

Attorneys for Plaintiff
JANGLE VISION, LLC

**PROOF OF SERVICE**

*JANGLE VISION, LLC V. ALEXANDER WANG INCORPORATED; ALEXANDER WANG AND DOES 1 THROUGH 10*

CASE NO. 2:21-CV-9964-GW-EX

  I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is at BUCHALTER, A Professional Corporation, 1000 Wilshire Boulevard, Suite 1500, Los Angeles, CA 90017-1730, and my e-mail address is jgass@buchalter.com.

  On the date set forth below, I served the foregoing document described as:

**FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 101, *ETC.***

on all other parties and/or their attorney(s) of record to this action by ☐ faxing and/or ☒ placing a true copy thereof in a sealed envelope as follows:

SEE ATTACHED.

☑ **BY MAIL** I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service. The address(es) shown above is(are) the same as shown on the envelope.  The envelope was placed for deposit in the United States Postal Service at Buchalter in Los Angeles, California on February 7, 2022. The envelope was sealed and placed for collection and mailing with first-class prepaid postage on this date following ordinary business practices.

☑ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.  Executed on February 7, 2022, at Los Angeles, California.

☑ I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  Executed on February 7, 2022, at Los Angeles, California.

| Janet E. Gasss | */s/ Janet E. Gass* |
|---|---|
|  | (Signature) |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SERVICE LIST**

*JANGLE VISION, LLC V. ALEXANDER WANG INCORPORATED; ALEXANDER WANG AND DOES 1 THROUGH 10*
CASE NO. 2:21-CV-9964-GW-EX

| | |
|---|---|
| Lindsay Korotkin<br>Arent Fox LLP<br>1301 Avenue of the Americas, 42nd Floor<br>New York, NY 10019 | Allan E. Anderson<br>Arent Fox LLP<br>555 West Fifth Street, 48th Floor<br>Los Angeles, CA 90013 |
| Sarah Alberstein<br>Arent Fox LLP<br>1717 K Street NW<br>Washington, DC  20006 | |

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

2
PROOF OF SERVICE

BN 45762517V3