1  ALLAN E. ANDERSON (SBN 133672)
   allan.anderson@arentfox.com
2  LINDSAY KOROTKIN (*pro hac vice forthcoming*)
   lindsay.korotkin@arentfox.com
3  SARAH ALBERSTEIN *(pro hac vice forthcoming)*
   sarah.alberstein@arentfox.com
4  **ARENT FOX LLP**
   555 West Fifth Street, 48th Floor
5  Los Angeles, California 90013-1065
   Telephone: 213.629.7400
6  Facsimile:  213.629.7401

7

8  Attorneys for Defendants
   ALEXANDER WANG INCORPORATED;
9  and ALEXANDER WANG

10                **UNITED STATES DISTRICT COURT**

11     **CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION**

12

13

| | |
|---|---|
| JANGLE VISION, LLC, a California limited liability company, | Case No.  2:21-cv-9964-GW (Ex) |
| Plaintiff, | **DEFENDANTS ALEXANDER WANG INCORPORATED AND ALEXANDER WANG'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CORRECTED FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| ALEXANDER WANG INCORPORATED, a Delaware Corporation; and ALEXANDER WANG, an individual, | |
| Defendants. | [Filed concurrently with Declaration of Allan E. Anderson; Request for Judicial Notice; and [Proposed] Order] |
| | Date:        April 7, 2022 |
| | Time:        8:30 a.m. |
| | Judge:       The Hon. George H. Wu |
| | Ctrm:        9D – 9th Floor |
| | Complaint Filed:        Dec. 28, 2021 |
| | First Amended Complaint Filed:        Feb. 7, 2022 |
| | Corrected First Amended Complaint Filed:        Feb. 8, 2022 |

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD**:

NOTICE IS HEREBY GIVEN THAT, on April 7, 2022 at 8:30 a.m. before the Honorable George H. Wu, in Courtroom 9D of the United States District Court, Central Division of California, Western Division, First Street Courthouse, 350 W. 1st Street, Los Angeles, California, Defendants Alexander Wang Inc. ("AWI") and Alexander Wang ("Wang") (collectively, "Alexander Wang"), move to dismiss Jangle Vision LLC's ("Plaintiff") Complaint in the above-captioned action in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(6).

This Motion is made following the conferences of counsel pursuant to L.R. 7-3, which took place on February 15, 2022.

This Motion is based on this Notice of Motion and Motion; accompanying Memorandum of Points and Authorities; the Declaration of Allan E. Anderson filed concurrently; a Request for Judicial Notice; the pleadings and papers filed in this action; and such further argument and matters as may be offered at the time of the hearing of this Motion.

Dated: February 22, 2022                  **ARENT FOX LLP**


By:  */s/Allan E. Anderson*
ALLAN E. ANDERSON
LINDSAY KOROTKIN (*pro hac vice forthcoming*)
SARAH ALBERSTEIN (*pro hac vice forthcoming*)
Attorneys for Defendants
ALEXANDER WANG
INCORPORATED; and
ALEXANDER WANG

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ............................................................................. 1

II.     FACTS .............................................................................................. 5

    A.     The asserted copyright registrations reflect highly specific depictions figures in bodysuits and/or face masks. ............................... 5

    B.     The Accused Wang Works are completely different from the Asserted Copyrights. ............................................................................ 6

        1.     Alexander Wang's use of bodysuits, face masks, and American flag colors and designs years before the alleged late 2018 submissions is known in the public realm. ................ 8

    C.     This is Plaintiff's third failed attempt to plead a plausible copyright infringement claim against Alexander Wang. ...................... 9

III.    LEGAL STANDARD ..................................................................... 11

IV.     ARGUMENT .................................................................................. 12

    A.     Plaintiff's baseless copyright infringement claim is implausible and must be dismissed. ......................................................... 12

        1.     Plaintiff cannot establish substantial similarity: the works are dissimilar and lack any protectable objective similarities............................................................................ 12

            a.     The Asserted Copyrights compared to the Wang Martini Glass Videos, Wang Martini Glass Photograph, and the Foreign Wang Pink Leg Billboard. ........................................................................ 14

            b.     The Jangle Vision American Pixel image compared to the Wang Gelatin A Cake Video and design. ............. 20

            c.     The Jangle Vision Neon Mixtape Series and Jangle Vision 4D Scribble Villains images compared to the various Alexander Wang products shown in CFAC Exhibit H. .............................................................. 22

        2.     This Court lacks jurisdiction over foreign infringement claims. ......................................................................................... 25

V.      CONCLUSION .............................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aliotti v. R. Dakin & Co.*,
   831 F.2d 898 (9th Cir. 1987) .............................................................................. 18

*Apple Comput., Inc. v. Microsoft Corp.*,
   35 F.3d 1435 (9th Cir. 1994) ............................................................................ 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................... 11

*Aurora World, Inc. v. Ty Inc.*,
   719 F. Supp. 2d 1115 (C.D. Cal. 2009) ........................................................... 16

*Banzai v. Broder Bros. Co.*,
   No, 08-0813, 2009 WL 1285518 (E.D. Pa. May 7, 2009) ................................ 21

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................... 11

*Buggs v. Dreamworks, Inc.*,
   No. CV 09-07070 SJO, 2010 WL 5790251 (C.D. Cal. Dec. 28, 2010) ............ 17

*Clarity Software, LLC v. Financial Independence Grp., LLC*,
   51 F. Supp. 3d 577 (W.D. Pa. 2014) ................................................................ 10

*Cory Van Rijn, Inc. v. California Raisin Advisory Bd.*,
   697 F. Supp. 1136 (E.D. Cal. 1987) ................................................................. 20

*Daniels v. Walt Disney Company*,
   958 F.3d 767 (9th Cir. 2020) ....................................................................... 23, 24

*Earth Flag Ltd. v. Alamo Flag Co.*,
   153 F. Supp. 2d 349 (S.D.N.Y. 2001) .............................................................. 22

*Evans v. McCoy-Harris*,
   No. CV 17-8345-DMG, 2019 WL 1002512 (C.D. Cal. Jan. 4, 2019) ......... 12, 16

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
   499 U.S. 340 (1991) .......................................................................................... 12

*Folkens v. Wyland Worldwide, LLC*,
  882 F.3d 768 (9th Cir. 2018) ................................................................. 13

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
  139 S. Ct. 881 (2019) .................................................................... 12, 23

*Funky Films, Inc. v. Time Warner Ent. Co., L.P.*,
  462 F.3d 1072 (9th Cir. 2006), *overruled on other grounds by
  Skidmore*, 952 F.3d 1051 ...................................................................... 13

*Gajo v. Chicago Brand*,
  No. 17-cv-00380-EMC, 2017 WL 2473142 (N.D. Cal. June 8, 2017) ............. 12

*Gorski v. The Gymboree Corp.*,
  No. 14-CV-01314-LHK, 2014 WL 3533324 (N.D. Cal. July 16,
  2014) ............................................................................................ 21

*Izmo, Inc. v. Roadster, Inc.*,
  No. 18-cv-06092-NC, 2019 WL 2359228 (N.D. Cal. June 4, 2019) ................ 24

*Litchfield v. Spielberg*,
  736 F.2d 1352 (9th Cir. 1984) ............................................................... 17

*Masterson v. Walt Disney Co.*,
  821 F. App'x 779 (9th Cir. 2020) ........................................................... 17

*Mathew Enter., Inc. v. FCA US, LLC*,
  No. 16-CV-03551-LHK, 2016 WL 6778534 (N.D. Cal. Nov. 16,
  2016), *aff'd*, 751 F. App'x 983 (9th Cir. 2018) ........................................ 11

*Mintz v. Subaru of Am., Inc.*,
  716 F. App'x 618 (9th Cir. 2017) ........................................................... 11

*Muromura v. Rubin Postaer & Assocs.*,
  No. CV 12-09263 DDP, 2013 WL 2395862 (C.D. Cal. May 31, 2013) 14, 16, 24

*Reece v. Island Treasures Art Gallery, Inc.*,
  468 F. Supp. 2d 1197 (D. Haw. 2006) ..................................................... 19

*Rentmeester v. Nike, Inc.*,
  883 F.3d 1111 (9th Cir. 2018), *overruled on other grounds by
  Skidmore*, 952 F.3d 1051 ................................................................ 14, 19

*Satava v. Lowry*,
323 F.3d 805 (9th Cir. 2003) .................................................................. 16, 18

*Schkeiban v. Cameron*,
No. CV 12-0636-R, 2012 WL 5636281 (C.D. Cal. Oct. 4, 2012),
*aff'd*, 566 F. App'x 616 (9th Cir. 2014) .............................................. 13

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
952 F.3d 1051 (9th Cir.), *cert. denied sub nom. Skidmore as Tr. for*
*Randy Craig Wolfe Tr. v. Zeppelin*, 141 S. Ct. 453 (2020), *reh'g*
*denied*, 141 S. Ct. 946 (2020) .............................................................. 13

*Star Fabrics, Inc. v. Wet Seal, Inc.*,
No. CV 14-07163 BRO, 2014 WL 12591271 (C.D. Cal. Dec. 2, 2014) ..... 13, 14

*Star Fabrics, Inc. v. Zulily, LLC et al.*,
No. 2:17-cv-08358-PSG-MRW, 2018 WL 5264360 (C.D. Cal.
April 17, 2018) .................................................................................... 17

*Studio S Imports, LLC v. Deutsch Imports, LLC*,
No. CV-19-10666-CJC(RAOx), 2021 WL 3598571 (C.D. Cal.
June 21, 2021) .................................................................................. 10, 13

*Subafilms, Ltd. v. MGM-Pathe Comms. Co.*,
24 F.3d 1088 (9th Cir. 1994) ............................................................ 25

*Thomas v. Walt Disney Co.*,
No. C-07-4392 CW, 2008 WL 425647 (N.D. Cal. Feb. 14, 2008),
*aff'd*, 337 F. App'x 694 (9th Cir. 2009) .............................................. 13

*Twelve Sixty LLC, et al. v. ITV Studios*,
No. CV 19-9959-GW-SKx, 2020 WL 1150935 (C.D. Cal. Mar. 3, 2020) ........ 25

**Federal Statutes**

17 U.S.C. § 101 .................................................................................. 20

17 U.S.C. § 102(b) ......................................................................... 5, 16

17 U.S.C. § 105 .................................................................................. 21

17 U.S.C. § 201(b) .............................................................................. 17

17 U.S.C. § 301 .................................................................................... 9

17 U.S.C. § 407 ........................................................................................... 5

17 U.S.C. § 407(a) ...................................................................................... 5

17 U.S.C. § 411(a) ............................................................................... 12, 23

**Other Authorities**

37 C.F.R. § 202.1 .................................................................................. 21, 22

37 C.F.R. § 202.1(a) ............................................................................. 23, 24

37 C.F.R. § 202.19 ...................................................................................... 5

37 C.F.R. § 202.20 ...................................................................................... 5

Compendium III of U.S. Copyright Office Practices,
    §§ 313.4(J), 313.5, 906.1, 907.2, 1503.1 (3rd ed. 2014) ............................ 5, 17

Fed. R. Civ. P. 8(a)(2) ............................................................................... 11

Fed. R. Civ. P. 11 ....................................................................................... 4

Fed. R. Civ. P. 11(c)(3) ............................................................................... 4

Fed. R. Civ. P. 12(b)(6) ............................................................................. 11

Fed. R. Civ. P. 12(c) ................................................................................. 17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff's Corrected First Amended Complaint ("CFAC") cannot survive a motion to dismiss because the asserted "Jangle Vision Twins" works are completely different from the accused Alexander Wang social media posts and products. Substantial similarity is the *sine qua non* of a copyright infringement claim, and the lack of similarity here is fatal. Tellingly, the CFAC does nothing more than assert legal conclusions that lack any plausible factual support. Plaintiff's conclusory allegations are easily refuted by an objective visual comparison of at-issue works. As such, they are insufficient as a matter of law to sustain a copyright infringement claim beyond this early stage.

Plaintiff is a disgruntled artist who, through this frivolous litigation, attempts to gain an unearned windfall from the internationally-acclaimed and world-famous contemporary fashion brand Alexander Wang due to a long-harbored grudge for not being hired for a freelance designer position back in 2018. The CFAC accordingly recounts a fantastical tale with no foundation in reality or the law. Plaintiff alleges that: in late 2018, a woman named Claudia Diroma, who also goes by Claudia Messica (Plaintiff's alleged assignor), submitted application materials to a freelance HR representative for Alexander Wang; Alexander Wang designers thereafter reviewed Ms. Diroma's HR files and/or website and nearly two years later used some of the content as inspiration for advertisements and products in a manner that comprises copyright infringement. For example, among Plaintiff's nonsensical and implausible allegations is that Alexander Wang's below black bags infringe Plaintiff's copyright in the following image of a shouting face surrounded by a grey tape cassette design. Dkt. 17 ¶¶ 41, 55; Dkt. 17-8 at 3.

| **Asserted Plaintiff Work** | **Alexander Wang Bags Allegedly Infringing Said Work** |
|:---:|:---:|
|  |  |

It is impossible to locate even a single point of similarity among these works, let alone the substantially similarity required for Plaintiff to evade dismissal.

The CFAC's other allegations fare no better. For example, Plaintiff claims Alexander Wang's use of the following masked female figures in bodysuits lounging in martini glass pools infringe Plaintiff's alleged rights in its very different visual depictions of androgynous forms. Dkt. 17 ¶¶ 15, 25-27, 30-31, 36.

| **Plaintiff's Asserted Jangle Vision Twins Works** | **Accused Alexander Wang Works** |
|:---:|:---:|
| |  |

1
2
3
4
5
6
7
8
9
10
11
12
13



14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

But the only possible point of similarity (if any) among these works is the basic concept or idea of a figure shown in whole or in part wearing a bodysuit and/or face mask. Copyright law does not protect such a general concept or idea and the parties' very different expressions of this unprotectable element are far too different from one another to support a copyright infringement claim. For example, the parties' expressions are completely different in color, shape, pattern, lighting, arrangement, positions, poses, facial expressions, depiction of the figures and their surroundings, and style, among other things. In any event, Alexander Wang's use of bodysuit and face mask themes in products and advertisements for many years (and long before Plaintiff's alleged submissions in late 2018) is known in the public realm.

Lastly, Plaintiff's CFAC also alleges that Alexander Wang's video of a jiggling gelatin American flag-themed cake featuring a bold "a" logo placed on a set dining table somehow infringes the following image of a screaming face bearing cubist-style stars and stripes design elements. Dkt. 17 ¶ 35.



| Plaintiff's Asserted Jangle Vision Twins Work | Still from Accused Wang Video |

Here too, the only possible point of similarity (if any) is the generic concept of the red, white, and blue colors and stripes of an American flag, which is not protectable and cannot support a claim for copyright infringement.[1]

Plaintiff's CFAC shocks the conscience by concluding with a demand for $81 million dollars in damages (an amount far higher than any brand would pay a freelance graphic designer, even for the best quality work). Plaintiff's damages demand includes a request to disgorge *all* of Alexander Wang's hard-earned profits for every product it sold bearing a rhinestone, or shades of the colors pink, yellow, grey, blue, green, or coral since 2020.

Alexander Wang has been, and remains, committed to fostering artistry and creativity, and has always celebrated and respected the artistic and protectable contributions of others, and expects others to respect its own. But there is simply no legal or plausible factual basis for Plaintiff's overreaching claims here. As such, dismissal with prejudice is the only appropriate outcome. Despite filing three different complaints across two cases, Plaintiff's CFAC *still* fails to state any cognizable claim for relief. Plaintiff's ongoing inability to articulate any plausible basis for a copyright infringement claim is no accident. Rather, it is a natural

_____

[1] Defendants reserve their right to seek sanctions and attorney's fees for Plaintiff's continued pursuit of frivolous baseless claims. The Court may also issue *sua sponte* sanctions, including under Rule 11 or its inherent authority. Fed. R. Civ. P. 11(c)(3).

outgrowth of the glaring indisputable fact that the asserted Jangle Vision Twins works are substantially *dis*similar from Alexander Wang's accused works. In sum, Plaintiff's allegations remain defective, baseless, and implausible, and cannot be cured with any further amendments. Dismissal with prejudice is warranted.

## II.    FACTS

### A.    The asserted copyright registrations reflect highly specific depictions figures in bodysuits and/or face masks.

Plaintiff Jangle Vision, LLC ("Plaintiff") purports to own seven copyright registrations for certain artwork depicting androgynous figures or faces wearing blue, black, white, pink, red, or red-white-and-blue face masks and/or bodysuits, referred to collectively as the "Jangle Vision Twins." Dkt. 17 ¶¶ 12-13 (the "Asserted Copyrights"). The Asserted Copyrights are shown in the deposits that Plaintiff submitted to the U.S. Copyright Office with applications to register the works, which are attached as exhibits to the CFAC and as shown in Appendix A (the "Deposits").[2]

The Asserted Copyrights do *not* grant Plaintiff exclusive rights in the concept or idea of a figure wearing a face mask and/or bodysuit. *See generally* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea . . . [or] concept . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work."). Rather, the Asserted Copyrights are limited to the specific original protectable elements of the works (if any) as shown in the Deposits.[3] As such, the Deposits reflect the metes and bounds of Plaintiff's

---

[2] *See* 17 U.S.C. § 407(a); 37 C.F.R. §§ 202.19-202.20; Dkt. 17-2 at 3; Dkt 17-3 at 4; Dkt. 17-4 at 4; Dkt. 17-5 at 4; Dkt. 17-6 at 4; Dkt. 17-7 at 4. The CFAC did not attach a deposit for the motion picture work shown in CFAC Exhibit A and does not allege that it is materially different from the others shown therein. Dkt. 17 ¶ 13. A copy of that video deposit is attached as Exhibit 1 to the Declaration of Allan Anderson (the "Anderson Decl."); *id.* ¶ 2. *See* Request for Judicial Notice, "RFJN" (filed concurrently).

[3] *See generally* 17 U.S.C. § 407; U.S. Copyright Office, Compendium III of U.S. Copyright Office Practices § 1503.1 (3rd ed. 2014).

copyright infringement claim and are the images against which defendants Alexander Wang Incorporated's and Alexander Wang's (together "Defendants" or "Alexander Wang") allegedly infringing works must be visually compared to assess the viability of Plaintiff's claim.

## B.    The Accused Wang Works are completely different from the Asserted Copyrights.

The CFAC, while dense and clumsily-worded, appears to accuse five sets of Alexander Wang works of infringement, namely: (1) two videos allegedly posted on social media in July 2020 featuring female figures in pink bodysuits with face masks lounging and swimming in martini glass-shaped pools, which, when the camera zooms out, are revealed to be sparkles of a distinctive Alexander Wang rhinestone bag (the "Wang Martini Glass Videos"), Dkt. 17 ¶¶ 25-29, 30-32; Anderson Decl. ¶¶ 3-4, Ex. 2-3; (2) a still-image from one of the Wang Martini Glass Videos that was allegedly emailed in July 2020 (the "Wang Martini Glass Photograph"), Dkt. 17 ¶ 33, Anderson Decl. ¶ 5, Ex. 4; (3) one video clip displaying a jiggling gelatin cake featuring an upside-down stylized version of an American flag with an "a" logo, resting on a table set with dinnerware, silverware, and glasses that was allegedly posted on social media in January 2020 (the "Wang Gelatin "A" Cake Video"), Dkt. 17 ¶ 35, Anderson Decl. ¶ 6, Ex. 5[4]; (4) alleged video billboards in Japan[5] featuring a leg wearing pink tights and stiletto high-heeled shoes emerging from behind a metallic silver curtain, that when zoomed out is revealed to be a wedge-platform sparkly sandal followed by the words "alexander wang" and "shibuya parco", an image or video of which was allegedly reposted on social media around November 2019 (the "Foreign Wang Pink Leg Billboard and Images"), Dkt. 17 ¶ 36, Anderson Decl. ¶ 7, Ex. 6; (5) various Alexander Wang clothing, swimwear, handbag,

---

[4]  The CFAC also complains this flag image was used on "sweatshirts or other garments." Dkt. 17 ¶ 35.

[5]  As addressed below in Section IV.A.2, this Court lacks jurisdiction over Plaintiff's apparent allegations of copyright infringement in Japan.

footwear, and hair accessory products due to their alleged use of nine standard colors, Dkt. 17 ¶ 37-41, Dkt. 17-8 (all five sets together the "Accused Wang Works").

Plaintiff's infringement allegations against the Accused Wang Works appear to consist of three main complaints. First, the CFAC alleges that the Wang Martini Glass Videos, Wang Martini Glass Photograph, and the Foreign Wang Pink Leg Billboard all allegedly infringe the images of the Jangle Twins characters as shown in the Asserted Copyrights. *See supra* Section I, p. 2-3.  Second, the CFAC alleges that the Wang Gelatin A Cake Video and flag design allegedly infringes the two-dimensional graphical work of red, white, and blue masked face work shown in the copyright registration for "Jangle Vision American Pixel." *See* Exhibit G, Dkt. 17-7 at 4; *supra* Section I, p. 4. Lastly, and perhaps most puzzlingly, the CFAC alleges that a wide array of Alexander Wang clothing, swimwear, footwear, handbag, and hair accessory products all allegedly infringe the copyright registrations for "Jangle Vision Neon Mixtape Series" (a two-dimensional graphical work of shouting faces on multi-colored cassette tapes) and "Jangle Vision 4D Scribble Villains" (a two-dimensional graphical work of five standing figures in front of what appears to be black buildings) because they allegedly incorporate the same or similar standard Pantone colors. *See* Dkt. 17 ¶ 39-42; Exhibit E, Dkt. 17-5 at 4; Exhibit D, Dkt. 17-4 at 4; Exhibit H, Dkt. 17-8. Images from the CFAC for this claim are shown below:

| Plaintiff's Jangle Vision Neon Mixtape Series work and Jangle Vision 4D Scribble Villains work | Representative sample of accused Wang products shown in CFAC Exhibit H |
|---|---|
|  | |

As shown below, none of these allegations comprise actionable claims for copyright infringement. Rather, an objective visual comparison of the Asserted Copyrights to the Accused Wang Works reveals no similarity as these works and products are different in almost every way possible, including their colors, composition, background, pose, lighting, angles, and more.

1.   *Alexander Wang's use of bodysuits, face masks, and American flag colors and designs years before the alleged late 2018 submissions is known in the public realm.*

Further damning to Plaintiff's claim, as shown through public documents, news reports, and websites is that Alexander Wang's use of bodysuits, face masks, and American flag colors and designs in products and advertisements was in the public realm years before Ms. Diroma allegedly shared her Jangle Vision Twins works with Mr. Juno Kim or anyone at Alexander Wang in late 2018, facts of which the Court can take judicial notice. Dkt. 17 ¶¶ 16-19; *see* RFJN; Anderson Decl. Exs. 7-17. For example, in 2014, the press reported on Alexander Wang's bondage-themed wardrobe for superstar musician Beyoncé for her "On the Run" tour. *Id.*, Exs. 7-8. In 2016, Alexander Wang promoted an Apple Music playlist through social media posts that prominently incorporated American flag stars and stripes designs.

*Id.*, Ex. 9. In 2017, the press reported on Alexander Wang's face mask collaboration with world-famous sportswear brand adidas; this mask covered the entire face except for holes for the eyes and mouth (similar to the face masks featured in some of the Accused Works at-issue here) and was promoted heavily on the internet. *Id.*, Ex. 10. From June to mid-November 2018, the press reported on, and Alexander Wang posted on social media about, Alexander Wang's fashion collections that included bondage themes, face masks, and American flag stars and stripes designs and colors in the products and advertisements. *Id.*, Exs. 11-17.

### C. This is Plaintiff's third failed attempt to plead a plausible copyright infringement claim against Alexander Wang.

The CFAC is Plaintiff's third failed bite at the apple. Plaintiff first pursued its copyright infringement claim on August 16, 2021 in a separate action before this Court, Case No. 2:21-cv-06627 ("Plaintiff's First Action"). The complaint in Plaintiff's First Action was also riddled with issues.[6] On the heels of Alexander Wang's motion for judgment on the pleadings due to Plaintiff's lack of ownership and standing and a lack of substantial similarity among the at-issue works, Plaintiff opted to file additional copyright applications and pursue new copyright infringement claims via a new action once the additional works registered. *Id.*, Dkts. 28, 31. For party and judicial economy, Alexander Wang cautiously consented to the proposal.

On December 28, 2021, Plaintiff filed a new complaint in this new action. Despite adding several copyright registrations and infringement allegations, the new complaint did not cure the legal errors that hampered the copyright infringement claim in Plaintiff's First Action. Rather, in expanding the infringement claim to several newly-registered works, the new complaint only became more frivolous. *See infra* Sections IV.A.1.b-c, IV.A.2.

---

[6] For example, it included a facially defective unfair competition claim that was pre-empted under the Copyright Act, 17 U.S.C. § 301. Plaintiff's counsel refused to withdraw that claim until after Alexander Wang fully briefed the issue, despite being made aware of the pre-emption issue during prior conferrals. Dkts. 21, 27.

The new complaint also did not cure the legal issues related to Plaintiff's lack of standing and ownership of the Asserted Copyrights. Plaintiff's ownership and standing claims were again based on a July 15, 2020 assignment, Dkt. 1 ¶ 13, even though according to the records of the California Secretary of State, plaintiff Jangle Vision, LLC was not formed until August 26, 2020—over one month after the alleged assignment was made. An assignment made to an entity before formation, like the one here, is void and invalid and cannot be a basis to assert copyright ownership or standing for an infringement claim.[7] Rather than concede defeat, again on the heels of Alexander Wang's filing of a motion to dismiss, Plaintiff colluded with counsel to prepare and execute a *nunc pro tunc* assignment in an effort to cure its glaring chain of title deficiencies. Plaintiff then filed a First Amended Complaint ("FAC") on February 7, 2022, and the CFAC the following day, which unsuccessfully attempted to rectify Plaintiff's faulty ownership and standing claims via an "Amended Assignment of Copyright *made effective as of August 31, 2020*" from Ms. Diroma to Plaintiff. Dkt. 15 ¶ 13; Dkt. 17 ¶ 13 (emphasis added). The FAC and CFAC failed to disclose that this "amended assignment" did not and could not cure the lack of ownership and standing as of this action's December 28, 2021 filing date, including because it harkens to an invalid assignment and it was only executed in late January or early February 2022, one month *after* the initial complaint was filed in this action.[8] These defects will likewise dispose of this case as a matter of law and can be addressed with limited expedited discovery and an early summary judgment motion

---

[7] *See, e.g.*, *Clarity Software, LLC v. Financial Independence Grp., LLC*, 51 F. Supp. 3d 577 (W.D. Pa. 2014) (granting summary judgement in part because the assignment was made to an assignee-entity that was not formed until after the date of the assignment, such that plaintiff never acquired valid ownership of the copyright).

[8] *Studio S Imports, LLC v. Deutsch Imports, LLC*, No. CV-19-10666-CJC(RAOx), 2021 WL 3598571, at *3 (C.D. Cal. June 21, 2021) (granting summary judgment and finding Plaintiff lacked standing because it did not own an exclusive right in the copyrights when it filed suit and that the *nunc pro tunc* assignment executed after the complaint was filed did not cure the lack of standing as of the filing date).

1    if the CFAC is not fully dismissed at this stage.

2 **III.    LEGAL STANDARD**

3      In order to survive a motion to dismiss, a complaint must contain a "short and

4 plain statement of the claim showing that the pleader is entitled to relief," Fed. R.

5 Civ. P. 8(a)(2), with enough detail to "give the defendant fair notice of what the . . .

6 claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S.

7 544, 555 (2007) (quotations omitted). A complaint must also be "plausible on its

8 face," meaning that it must set forth "more than a sheer possibility that a defendant

9 has acted unlawfully" and must state allegations that are "entitled to the assumption

10 of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive dismissal, a

11 complaint must plausibly state facts that "raise a right to relief above the speculative

12 level." *Twombly*, 550 U.S. at 555 (citation omitted). For Rule 12(b)(6) purposes, "[a]

13 claim has facial plausibility when the plaintiff pleads factual content that allows the

14 court to draw the reasonable inference that the defendant is liable for the misconduct

15 alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

16      "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

17 relief' requires more than labels and conclusions, and a formulaic recitation of the

18 elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. On review of

19 a motion to dismiss, courts "are not bound to accept as true a legal conclusion

20 couched as a factual allegation." *Iqbal*, 556 U.S. at 678. A court also "is not obligated

21 to make 'unwarranted deductions of fact, or unreasonable inferences'" in favor of the

22 non-moving party. *Mintz v. Subaru of Am., Inc.*, 716 F. App'x 618, 621 (9th Cir.

23 2017). As such, "conclusory allegations of law and unwarranted inferences are

24 insufficient to defeat a motion to dismiss." *Mathew Enter., Inc. v. FCA US, LLC*, No.

25 16-CV-03551-LHK, 2016 WL 6778534, at *4 (N.D. Cal. Nov. 16, 2016), *aff'd*, 751

26 F. App'x 983 (9th Cir. 2018). The CFAC fails under this standard.

27

28

## IV.   ARGUMENT

### A.    Plaintiff's baseless copyright infringement claim is implausible and must be dismissed.

To establish copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). An asserted copyright must be validly registered before the action is filed and must cover protectable original and non-generic elements of the asserted work. *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019); *Gajo v. Chicago Brand*, No. 17-cv-00380-EMC, 2017 WL 2473142, at * 2 (N.D. Cal. June 8, 2017); 17 U.S.C. § 411(a). To establish copying of original elements, a plaintiff must prove that: (1) that defendant had access to plaintiff's work and (2) that the works are substantially similar. *Evans v. McCoy-Harris*, No. CV 17-8345-DMG (AGRx), 2019 WL 1002512, at *2 (C.D. Cal. Jan. 4, 2019). Plaintiff's CFAC fails, including under the copying prong of this test.[9]

> 1.    *Plaintiff cannot establish substantial similarity: the works are dissimilar and lack any protectable objective similarities.*

The CFAC should be dismissed *with prejudice* because the Asserted Copyrights and the Accused Wang Works are dissimilar as a matter of law and there are no objective similarities among their protectable elements. Rather, the allegedly similar elements of figures in face masks or bodysuits; circles; the colors and design of the American flag; and various shades of pink, yellow, grey, blue, green, and coral are unprotectable general shapes, concepts, and/or ideas that cannot sustain a claim of substantial similarity or infringement. Even if they were protectable, the parties' expressions are so different from one another that dissimilarity and non-infringement

---

[9] Alexander Wang does not concede access, copying, or any other element or defense. Rather, for purposes of a motion to dismiss, Alexander Wang merely focuses on the legal question of substantial similarity.

1    are the only plausible conclusions that can be drawn under these facts.

2    In this Circuit, substantial similarity under the copying prong of the

3    infringement test is assessed through: (1) "the extrinsic test, [which] compares the

4    objective similarities of specific expressive elements in the two works" and (2) the

5    "intrinsic test, [which] 'test[s] for similarity of expression from the standpoint of the

6    ordinary reasonable observer, with no expert assistance." *Skidmore as Tr. for Randy*

7    *Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir.), *cert. denied sub*

8    *nom. Skidmore as Tr. for Randy Craig Wolfe Tr. v. Zeppelin*, 141 S. Ct. 453 (2020),

9    *reh'g denied*, 141 S. Ct. 946 (2020). At the motion to dismiss (and summary

10   judgment) stage, courts only address the objective extrinsic test. *Funky Films, Inc. v.*

11   *Time Warner Ent. Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006), *overruled on other*

12   *grounds by Skidmore*, 952 F.3d 1051; *Star Fabrics, Inc. v. Wet Seal, Inc.*, No. CV

13   14-07163 BRO (SHx), 2014 WL 12591271, at *4 (C.D. Cal. Dec. 2, 2014).

14   Importantly, cases can be dismissed *with prejudice* upon a finding of non-

15   infringement due to lack of substantial similarity because dissimilarity reflects a fatal

16   error that cannot be cured with an amendment. *See Thomas v. Walt Disney Co.*, No.

17   C-07-4392 CW, 2008 WL 425647, at *2, 6 (N.D. Cal. Feb. 14, 2008), *aff'd*, 337 F.

18   App'x 694 (9th Cir. 2009).[10]

19   The CFAC fails under the extrinsic test and must be dismissed at this stage.

20   The two-pronged extrinsic test is limited to assessment of the objective similarities

21   between the at-issue works and only focuses on the protectable elements of the

22   plaintiff's expression. *See Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 773

23   (9th Cir. 2018). To conduct the extrinsic test, first, "[t]he plaintiff must identify the

24

---

25   [10] *Id.* (dismissing complaint with prejudice for lack of similarity and explaining that
26   "[b]ecause this finding is based on the works themselves and not on Plaintiff's
     pleadings, leave to amend would be futile."); *Schkeiban v. Cameron*, No. CV 12-
27   0636-R (MANx), 2012 WL 5636281, at *1 (C.D. Cal. Oct. 4, 2012), *aff'd*, 566 F.
28   App'x 616 (9th Cir. 2014) (dismissing complaint with prejudice for lack of
     substantially similarity, "a defect that cannot cured by an amended complaint").

*source(s)* of the alleged similarity between [its] work and defendant's work." *Apple Comput., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994). Then, the court "must 'filter out' the unprotectable elements of the plaintiff's work—primarily ideas and concepts, material in the public domain, and scènes à faire (stock or standard features that are commonly associated with the treatment of a given subject)" and compare the "protectable elements that remain . . . [with the] corresponding elements of the defendant's work to assess similarities in the objective details of the works." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018), *overruled on other grounds by Skidmore*, 952 F.3d 1051; *see also Star Fabrics*, 2014 WL 12591271, at *4 ("In applying the extrinsic test . . . a court must examine 'the similarities in their objective details in appearance, including, but not limited to, the subject matter, shapes, colors, materials, and arrangement of the representations."). For an infringement claim to be objectively viable under the extrinsic test, the protectable elements of the at-issue works "must be similar enough that 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them.'" *Rentmeester*, 883 F.3d at 1121 (citation omitted). In addition, if no protectable expressive elements are asserted or remain after filtration, then a complaint should be dismissed. *See id.*; *Muromura v. Rubin Postaer & Assocs.*, No. CV 12-09263 DDP (AGRx), 2013 WL 2395862, at *3 (C.D. Cal. May 31, 2013). As shown below, all of the allegations in the CFAC fail under this test.

> a.  *The Asserted Copyrights compared to the Wang Martini Glass Videos, Wang Martini Glass Photograph, and the Foreign Wang Pink Leg Billboard.*

Plaintiff's allegations that the Wang Martini Glass Videos, Wang Martini Glass Photograph, and the Foreign Wang Pink Leg Billboard infringe the specific expressions of the Jangle Vision Twins shown in the Asserted Copyrights fails under the extrinsic test. The Asserted Copyrights do not protect the general idea or concept of a figure wearing a bodysuit or face mask, or a circle shape. Nor are there any

protectable objective similarities among the at-issue works to otherwise support Plaintiff's claim. This portion of Plaintiff's infringement claim must be dismissed.

Plaintiff's CFAC alleges the following similarities among the Asserted Copyrights and the Wang Martini Glass Videos and Wang Martini Glass Photograph: (1) the Wang Martini Glass Videos show "androgynous-presenting female characters which are substantially similar to the Jangle Vision Twins character design. These similarities include lithe, angular, elongated bodies in unnatural postures, in pink skin-like full-body coverings revealing only their eyes and mouth through openings in the face of the skin" and that "the female characters in Defendants' advertisement were framed within circular environments . . . [namely] a round martini-glass-shaped pool." Dkt. 17 ¶¶ 26, 27; (2) "These animated characters [in the Wang Martini Glass Videos] and how they are displayed . . . are substantially similar to corresponding elements of original copyrighted artistic authorship embodied and displayed in the Registered Works, including but not limited to the substantially similar elements that are discernable in the images excerpted from Defendants' animated characters and animated advertisements reproduced in this Complaint and its Exhibits." Dkt. 17 ¶ 31; (3) the Wang Martini Glass Videos and Wang Martini Glass Photograph "by design, indelibly conflate and merge in the perception of the viewing consumer the highly distinctive, ultra-modern, memorable Jangle Vision Twins images, unlawfully reproduced as the substantially similar Infringing Characters, by displaying the Infringing Characters in circular pools, intentionally meant to invoke the same circular environment in which Ms. Diroma presented the Jangle Vision Twins in several of the Registered Works . . . ." Dkt. 17 ¶ 51. Regarding the Foreign Wang Pink Leg Billboard, Plaintiff's CFAC alleges that it "include[s] a still image displaying a woman's leg and arm covered in colored skin, and a video clip displaying a woman's leg covered in colored skin, that evokes and are inspired by the Jangle Vision Twins characters." Dkt. 17 ¶ 36.[11]

---

[11] The CFAC also alleges that Plaintiff published "additional advertisements

Plaintiff's vague allegations of similarity are all baseless and implausible, and otherwise rely on improper claims of ownership of unprotectable general shapes, concepts, or ideas. Under the extrinsic test, this Court must filter out Plaintiff's claims of similarity based on the allegedly shared general concepts or ideas of figures in bodysuits and/or face masks, and the circle shape. As explained above, copyright law does not protect concepts or ideas, rather it only protects the specific original expression of a concept or idea. *See* 17 U.S.C. § 102(b); *cf. Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1136 (C.D. Cal. 2009) ("[N]o copyright protection can be afforded the idea of producing plush toys that resemble particular animals."). In addition, "[e]lements of expression that necessarily follow from an idea, or expressions that are as a practical matter, indispensable or at least standard in the treatment of an idea are [also] not protected." *Muromura*, 2013 WL 2395862, at *2 (citations, quotation marks, and alterations omitted). "Similarly, expressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law." *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003).

The idea or concept of a figure in a bodysuit or face mask is not protectable under copyright laws, nor is it original to or created by Plaintiff or its alleged assignor. Rather, this idea has been a part of popular media and cultural imagery for

---

featuring lithe female figures clad in black 'skins' in exotic poses . . . holding, wearing or displaying Defendants' rhinestone handbags or other Spin-Off Products." Dkt. 17 ¶ 42. The CFAC provides no images, dates, or other information on these purposed advertisements, despite three chances to amend. Among other things, the CFAC does not claim Plaintiff has any assertable rights in female figures in "black 'skins' in exotic poses . . . wearing, holding, or displaying [] rhinestone handbags." Dkt. 17 ¶ 42. To the extent the CFAC is construed as being sufficiently clear and particular to cover these works, then the arguments regarding dissimilarity herein apply with equal force to these works. *See generally Evans*, 2019 WL 1002512, at *3 (dismissing complaint that for failure to plead facts establishing similarities, let alone substantial similarities) (C.D. Cal. Jan. 4, 2019); *Tate-Robertson*, No. EDCV 19-27 JGB (SHKx), 2019 WL 6448960, *5 (C.D. Cal. May 16, 2019) (dismissing complaint and finding barebones allegation of substantial similarity implausible without a description of the designs and the similarities between the at-issue works).

decades, including as embodied by the characters Catwoman and Batgirl in Batman movies and comics, and as a part of the BDSM subculture and cultural and artistic references to it, facts of which the Court can take judicial notice. *See* RFJN; Anderson Decl., Ex. 18. It is also in the public realm that Alexander Wang has made products and advertisements employing this concept and idea for years, all long before Plaintiff's claimed late 2018 submission date. *See supra* Section II.B.1. Likewise, the allegedly shared element of a circular shape is not protectable and cannot establish similarity. *See* 17 U.S.C. § 201(b); Dkt. 17 ¶¶ 26, 27, 30, 39, 51. It is well-settled that "familiar symbols and designs are not copyrightable," including "common geometric shapes" like "circles, ovals, [and] spheres . . . ." U.S. Copyright Office, Compendium III of U.S. Copyright Office Practices, §§ 313.4(J), 313.5, 906.1, 907.2 (3ʳᵈ ed. 2014). Plaintiff's general claims of similarity are akin to those rejected in *Masterson v. Walt Disney Co.*, 821 F. App'x 779, 782 (9th Cir. 2020), which affirmed dismissal with prejudice because "it is not plausible that the [works] have any substantial similarity under the extrinsic test" and all the asserted similarities must be filtered out as unprotectable or too general to be a similarity. As in *Masterson*, this general concept and idea cannot sustain a claim for similarity or infringement and must be filtered out. *See also Star Fabrics, Inc. v. Zulily, LLC et al.*, No. 2:17-cv-08358-PSG-MRW, 2018 WL 5264360 (C.D. Cal. April 17, 2018) (granting partial Rule 12(c) motion; no substantial similarity once unprotectable elements were filtered out).

For an infringement claim to be viable, "it is not enough for a plaintiff to show that the ideas are substantially similar. [Rather,] a plaintiff must show 'substantial similarities of *both* ideas and expression.'" *Buggs v. Dreamworks, Inc.*, No. CV 09-07070 SJO (AGRx), 2010 WL 5790251, at *4 (C.D. Cal. Dec. 28, 2010) (quoting *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984)). Courts in this Circuit routinely dismiss or reject copyright infringement claims as non-viable when, like here, they merely allege similarity over an unprotectable idea or concept.[12] With the

---

[12] *See, e.g.*, *Masterson*, 821 F. App'x at 782 (affirming dismissal of copyright

unprotectable concepts, ideas, and shapes are filtered out, the dissimilarities between the parties' expressions here are readily apparent. As shown in the above side-by-side comparison, *see supra* Section I, the works differ in every possible manner, including color, shape, pattern, lighting, arrangement, positions, poses, outfits, depiction of the figures and their surroundings, background, medium, and style. For example, even just considering the accused face mask elements: Plaintiff's figures' masks feature exposed noses and eyebrows with open-mouthed expressions, while Alexander Wang's figures (when their faces are even visible) have concealed noses and eyebrows, and stoic closed-mouth expressions. Further, Plaintiff's figures appear in a flat illustrative graphical style, while Alexander Wang's figures appear in a live-action, dimensional, realistic, animation style. The at-issue works also employ very different poses and views, as Plaintiff's Asserted Copyrights are limited to faces, or figures standing or sitting upright in baroque chairs, while Alexander Wang's figures are lying down or reclined in martini glass-shaped pools (or in the case of the Foreign Wang Pink Leg Billboard, largely concealed behind a metallic curtain).

In addition, Plaintiff's Asserted Copyrights do not contain the distinctive original elements of the Alexander Wang works, such as rhinestone bags, martini glass-shaped swimming pools, moody navy-and-black forest backdrops, or dramatic pan-out camera shots that magically transform images of swimming figures into sparklingly rhinestone handbags. *See* Dkt. 17 ¶¶ 27, 30, 51. Given these dramatic differences, the at-issue works fall far short of the requirement that they "be similar enough that 'the ordinary observer, unless he set out to detect the disparities, would

---

infringement claim including because shared theme was too general to be protected); *Satava*, 323 F.3d at 811-12 (finding artist could not claim copyright in the common elements of jellyfish sculpture because "to recognize copyright protection in their combination effectively would give [plaintiff] a monopoly on lifelike glass-in-glass sculptures of single jellyfish with vertical tentacles."); *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987) (finding open mouth of T-rex stuffed animal was not a protectable element to support a finding of substantial similarity because a T-rex is commonly pictured with its mouth open); *see also* Anderson Decl., Ex. 19.

be disposed to overlook them.'" *Rentmeester*, 883 F.3d at 1121 (citation omitted).

Plaintiff's allegations of similarity are like those dismissed with prejudice for lack of substantial similarity under the extrinsic test in *Rentmeester*, 883 F.3d at 1121. In that case, the Ninth Circuit affirmed a finding that a photograph of Michael Jordan was not infringed by a logo based on that photograph[13] because Nike only borrowed the general unprotectable idea or concept of Michael Jordan holding a basketball above his head in a position that evoked a *grand jeté*, not the "details of the pose as expressed in [plaintiff's] photo." *Id.* The court found the works were sufficiently dissimilar as "[t]he position of each of his limbs in the two photos is different, [] and those differences in detail are significant because, among other things, they affect the visual impact of the images." *Id.* at 1121-22. As *Rentmeester* instructs, copyright law does not protect the idea or concept of a posed figure, only the specific expression of that idea. Under this rule, Plaintiff's claim fails.[14]

The case *Reece v. Island Treasures Art Gallery, Inc.*, 468 F. Supp. 2d 1197, 1206-7 (D. Haw. 2006), while a slightly different procedural posture, is also instructive. The *Reece* court denied a preliminary injunction motion, finding that "[t]he idea of a hula dancer performing an 'ike movement in the hula kahiko style from the noho position is not protected" and "[w]hen the protected elements of Plaintiff's 'Makanani,' viewed in isolation, are compared to the stained glass artwork, their differences are clear." *Id.* Similarly here, the idea of a figure in a bodysuit, face mask, and/or a "circular environment" is not protectable, and any protectable elements and expressions that remain are extremely different.

Moreover, when there is only a limited number of ways to create an image, the alleged "copying must be identical or virtually so to state a claim for copyright

---

[13] In contrast, here Alexander Wang's works were independently created.

[14] *Cf. Zella*, 529 F. Supp. 2d at 1133 ("The protectable elements must demonstrate 'not just 'similarity,' but 'substantial similarity,' and it must be measured at the level of the concrete 'elements' of each work, rather than at the level of the basic 'idea,' or 'story' that it conveys.").

infringement." *Cory Van Rijn, Inc. v. California Raisin Advisory Bd.*, 697 F. Supp. 1136, 1145 (E.D. Cal. 1987) (granting motion to dismiss copyright infringement claims and finding "no extrinsic similarities between the two works other than the common idea of an anthropomorphic raisin"). Thus, even if the concept of a figure wearing a bodysuit and/or face mask was protectable (it is not), Plaintiff would have to allege the parties' expressions are identical or virtually identical. Yet, by referring to the Accused Wang Works as "derivative works", Plaintiff already conceded that these works are different and not identical or virtually identical to the Asserted Copyrights. *See* Dkt. 17 ¶¶ 31, 49; 17 U.S.C. § 101 ("A 'derivative work' is a work based upon one or more preexisting works, such as a . . . motion picture version, . . . art reproduction, . . . or any other form in which a work may be recast, transformed, or adapted."). For this additional reason, Plaintiff's claim cannot survive.

        b.   *The Jangle Vision American Pixel image compared to the Wang Gelatin A Cake Video and design.*

Plaintiff's allegation that the Wang Gelatin A Cake Video and design infringes the asserted Jangle Vision American Pixel registration fails under the extrinsic test. Dkt. 17 ¶ 35; Dkt. 17-7. There are no protectable objective similarities between these works. Thus, this portion of Plaintiff's infringement claim must also be dismissed.

Regarding similarity, the CFAC only alleges that the Wang Gelatin A Cake Video features a "gelatin mold styled in the general form of a U.S. flag, with the colored lines and fields presented in rows of dots or pixels" that "is substantially similar to and infringes the copyrighted expression contained in the registered Jangle Vision American Pixel." Dkt. 17 ¶ 35. No other allegations of "similarity" beyond this conclusory statement are provided. Nonetheless, *arguendo* construing the CFAC in the light most favorable to Plaintiff, the only possible similarities here are: the use of the colors red, white, and blue; red and white stripes; and circle shapes (e.g. blue circles in lieu of stars for Alexander Wang's work and pixel circles in Plaintiff's work). These elements are not protectable or actionable under the law.

The American flag is a U.S. government work that is in the public domain and cannot be registered or claimed as a copyright by a private party. *See* 17 U.S.C. § 105. As the U.S. Copyright Office and courts have repeatedly held, the American flag, and its famous red, white, and blue stars and stripes motif, are not protectable. *See e.g.*, U.S. Copyright Office Review Board, Re: Second Request For Reconsideration For Refusal To Register American Flag Bat Display; Correspondence Id: 1-18otc58, https://www.copyright.gov/rulings-filings/review-board/docs/american-flag.pdf (July 13, 2016) (denying registration because "[t]he overall arrangement of red, white, and blue baseball bats into a pseudo-rectangular shape is dictated by a symbol firmly in the public commons - the American flag. . . . The American flag is certainly as familiar a symbol as the fleur de lys or yin yang" and "[c]opyright does not protect familiar designs [such as] the American flag . . ."); *Banzai v. Broder Bros. Co.*, No, 08-0813, 2009 WL 1285518, at *3 (E.D. Pa. May 7, 2009) (finding work was not protectable because "its only unique contribution was to select the colors red, white, and blue. . . . [which] are commonly matched colors, perhaps most notably on the American flag. . . . Placing these basic, predictable color combinations into a pre-existing design does not satisfy the minimum creativity necessary to establish a valid copyright."). Therefore, under the extrinsic test, the Court must filter out the unprotectable public domain elements of the American flag, including the colors red, white, and blue, and red and white stripes.[15]

After filtering out the flag elements, at best, all that remains is a claim that the Wang Gelatin A Cake Video's blue circles on the cake are similar to Plaintiff's circular pixel shapes. But that allegation similarity of general shapes or colors (if even protectable) cannot support a copyright infringement claim. *See* 37 C.F.R. § 202.1; *Gorski v. The Gymboree Corp.*, No. 14-CV-01314-LHK, 2014 WL 3533324,

---

[15] As noted above in Section II.B.1, it is known in the public realm that Alexander Wang has employed the colors red, white, and blue and American flag stars and stripes themes for many years, and all long before Plaintiff even alleges the Jangle Vision Twins works were submitted to Alexander Wang. *See also* RFJN.

at *5 (N.D. Cal. July 16, 2014) (finding all the similarities between the works related to "an arrangement of a short phrase" that is not protectable under 37 C.F.R. § 202.1).

Rather, the dramatic differences between the works are readily apparent and include that: (i) Alexander Wang's work features a cake and rectangular flag without a face, while Plaintiff's work is a shouting face with eyes, a nose, and a mouth; (ii) Alexander Wang's work features a large prominent "a" logo, while Plaintiff's work contains no letters; (iii) Alexander Wang's background is a table with white dinnerware, silverware, and glasses, while Plaintiff's work features a black background without plates, glasses, or silverware; (iv) Alexander Wang's work is a video in a realistic style, while Plaintiff's work is still image, graphical and digital in style; (v) Alexander Wang's work has bold lighting that creates reflections on the silverware and glasses, while Plaintiff's work has no discernable light source.[16]

Lastly, since the Jangle Vision American Pixel work incorporates the American flag, it is a derivative work. "Although derivative works are protectable, copyright protection extends only to the non-trivial, original contributions of the derivative work's author." *Earth Flag Ltd. v. Alamo Flag Co.*, 153 F. Supp. 2d 349, 353 (S.D.N.Y. 2001).[17] *Arguendo* the only possible non-trivial original contribution in Jangle Vision American Pixel is a pixelated cubist display of a screaming face, which is completely absent from the Wang Gelatin A Cake Video and design (or any other Accused Wang Works). There is no similarity here.

       c.   *The Jangle Vision Neon Mixtape Series and Jangle Vision 4D Scribble Villains images compared to the various Alexander Wang products shown in CFAC Exhibit H.*

Plaintiff's allegation that the dozens of Alexander Wang clothing, swimwear,

---

[16] To the extent Plaintiff also complains that the Wang "a" flag design was also used in sweatshirts or other garments, then the differences would include one being an wearable garment and the other being a two-dimensional picture.

[17] *Id.* (granting summary judgment and finding registration unenforceable because the asserted flag design was a public domain photograph transferred in medium with "no non-trivial, original component that entitles it to copyright protection.").

footwear, handbag, and hair accessory products shown in CFAC Exhibit H infringe the Jangle Vision Neon Mixtape Series and Jangle Vision 4D Scribble Villains copyright registrations fails under the extrinsic test. There are no protectable objective similarities between these completely dissimilar works and products, and Plaintiff's ludicrous suggestion that it owns copyrights or registrations in certain colors fails as a matter of law. The Court should not hesitate to dismiss this claim.

Plaintiff's CFAC alleges the following similarities among these works: that Wang's clothing, swimwear, footwear, handbag, and hair accessory products "are offered in a collection of nine separate colors that exactly copy and consist of each of the nine specific colors that comprise the *copyrighted Jangle Vision Palette*, and no other color or colors," Dkt. 17 ¶ 41 (emphasis added), and "Defendants have added the Spin-Off Products, in a collection of colors that exactly copies and infringes the *registered Jangle Vision Palette*." Dkt. 17 ¶ 53 (emphasis added).

Plaintiff's allegations are baseless and legally flawed for several reasons. First, colors are not protectable under copyright law. 37 C.F.R. § 202.1(a) ("[M]ere variations of . . . coloring" are not copyrightable); *see Daniels v. Walt Disney Company*, 958 F.3d 767, 772 (9th Cir. 2020) (affirming dismissal of copyright infringement claim and stating that "colors themselves are not generally copyrightable. . . . Daniels cannot copyright the idea of colors or emotions."). To the extent Plaintiff is claiming infringement because of shared use of the same or similar colors, this claim is legally invalid and must be dismissed. *Id.*

Second, the CFAC's representations that the "Jangle Vision Palette" is "copyrighted" and "registered" as a copyright *are false*. Dkt. 17 ¶¶ 41, 53. According to the CFAC, the "Jangle Vision Palette" is "a collection of nine specific colors" in which the "Jangle Vision Twins characters body coverings, and other images and designs in the Jangle Vision Twins works[] are presented." Dkt. 17 ¶ 12. Plaintiff does not own and has not asserted any purported copyright registration for colors or a "Jangle Vision Palette." *See generally* 17 U.S.C. § 411(a); *Fourth Est. Pub. Benefit*

*Corp.*, 139 S. Ct. at 887 ("[R]egistration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights."); *Izmo, Inc. v. Roadster, Inc.*, No. 18-cv-06092-NC, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019) (dismissing copyright infringement claims in amended complaint under Section 411 and *Fourth Estate* for works registered after the original complaint was filed). Nor could it because as noted above, copyright law does not protect colors. 37 C.F.R. § 202.1(a); *Daniels*, 958 F.3d at 772.[18]

Rather, the only Asserted Copyrights that refer or relate to the "Jangle Vision Palette" according to the CFAC are: (1) the Jangle Vision Neon Mixtape work, which allegedly "consists of nine panels, each depicting the face of a Jangle Vision Twin within a circular frame. On eight of the nine panels, starting with the panel second from the left, the respective Jangle Vision Twin image is set against a background displaying one of eight specific colors included in the Jangle Vision Palette", Dkt. 17 ¶ 39; Exhibit E, Dkt. 17-5; and (2) the Jangle Vision 4D Scribble Villains, which allegedly shows a figure in "a particular shade of light blue" that is the "ninth Jangle Vision Palette color", Dkt. 17 ¶ 40; Exhibit D, Dkt. 17-4.[19] Therefore, this claim must be construed by comparing the deposit images of the asserted "Jangle Vision Neon Mixtape Series" registration and "Jangle Vision 4D Scribble Villains" registration against the Wang products shown in the CFAC's Exhibit H. *See* Dkt. 17 ¶ 39-42; Exhibit E, Dkt. 17-5 at 4; Exhibit D, Dkt. 17-4 at 4; Exhibit H, Dkt. 17-8.

Applying the extrinsic test to these at-issue works, with the baseless claims to ownership of color alone ignored or filtered out, no protectable similarities remain (or are even alleged). *See Muromura*, 2013 WL 2395862, at *3 (dismissing complaint as "[a]bsent identification of any specific expressive elements in either Plaintiff's artwork or RPA's allegedly infringing advertisements, Plaintiff cannot possibly

---

[18] Even if it did, the majority of the products shown in CFAC Exhibit H do not even match the color hue of the asserted Pantone or undefined color that Plaintiff claims.

[19] Strangely, Exhibit H claims rights in ten colors, but the CFAC only references nine colors.

establish that the two works are extrinsically substantially similar."). For example, Plaintiff's works are a graphical image of screaming masked faces placed against the backdrop of colored tape cassette designs and an image of five pixelated characters in black, red, blue, and pink bodysuits standing in front of black buildings. In contrast, Alexander Wang's works are three-dimensional wearable products, including apparel, footwear, and accessories, that look nothing like Plaintiff's asserted works and do not feature images of screaming masked faces, cassette tapes, or pixelated figures in bodysuits in front of buildings. Plaintiff's claim is meritless.

>2.   *This Court lacks jurisdiction over foreign infringement claims.*

The CFAC also appears to assert infringement based on advertisements and billboards allegedly published in Japan. Dkt. 17 ¶ 36. Even assuming *arguendo* that Alexander Wang was responsible for them, Plaintiff has no basis to assert foreign infringement claims in this Court. "[C]opyright laws do not apply extraterritorially." *Subafilms, Ltd. v. MGM-Pathe Comms. Co.*, 24 F.3d 1088, 1094 (9th Cir. 1994).[20] As such, the Japanese infringement allegation must be dismissed.[21]

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Alexander Wang's motion and dismiss Plaintiff's CFAC with prejudice.

---

[20] *Id.* ("[T]he mere authorization of acts of infringement that are not cognizable under the United States copyright laws because they occur entirely outside of the United States does not state a claim for infringement under the Copyright Act."); *Twelve Sixty LLC, et al. v. ITV Studios*, No. CV 19-9959-GW-SKx, 2020 WL 1150935, at *2 (C.D. Cal. Mar. 3, 2020) (dismissing claim with prejudice; alleged use of U.S. copyrighted song in the Netherlands was outside the reach of the U.S. Copyright Act, despite allegation that U.S.-based defendants "approved, controlled, and financially benefited from the illegal use and exploitation of Plaintiffs' music.").

[21] To the extent Plaintiff alleges that Alexander Wang's alleged posting of an image of an allegedly infringing billboard in Japan on social media comprises copyright infringement here, that claim is addressed in the above Section IV.A.1.a.

1    Dated:  February 22, 2022              **ARENT FOX LLP**

2

3                                          By:  */s/Allan E. Anderson*
                                           _____
4                                          ALLAN E. ANDERSON
                                           LINDSAY KOROTKIN (*pro hac vice*
5                                          *forthcoming)*
                                           SARAH ALBERSTEIN (*pro hac vice*
6                                          *forthcoming)*
                                           Attorneys for Defendants
7                                          ALEXANDER WANG
                                           INCORPORATED; and
8                                          ALEXANDER WANG

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28