UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-9964-GW-Ex | Date | May 11, 2022 |
|---|---|---|---|
| Title | *Jangle Vision, LLC v. Alexander Wang Incorporated, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** **IN CHAMBERS - TENTATIVE RULING ON DEFENDANTS ALEXANDER WANG INCORPORATED AND ALEXANDER WANG'S MOTION TO DISMISS PLAINTIFF'S CORRECTED FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM [20]**

Attached hereto is the Court's Tentative Ruling on Defendants' Motion to Dismiss [20], presently set for May 12, 2022 at 8:30 a.m.

| | : |
|---|---|
| Initials of Preparer | JG |

***Jangle Vision, LLC v. Alexander Wang Inc., et al.***, Case No. 2:21-cv-9964-GW-(Ex)
Tentative Ruling on Motion to Dismiss Plaintiff's Corrected First Amended Complaint
for Failure to State a Claim

**I. Background**

  Jangle Vision, LLC ("Plaintiff") filed suit against defendants Alexander Wang Incorporated and Alexander Wang (collectively, "Defendants") – in *this* action – on December 28, 2021. Plaintiff's operative complaint is the "[Corrected] First Amended Complaint for Copyright Infringement under 17 U.S.C. § 101, etc." ("CFAC"), filed February 8, 2022. *See* Docket No. 17. The CFAC presents a single claim for federal copyright infringement under 17 U.S.C. §§ 101 et seq.[1] Defendants now move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the CFAC with prejudice.

  Plaintiff is "a multi-faceted art and design house focusing on the intersection of art and design in real world and technical applications." CFAC ¶ 11. "Commencing in or around 2015, and continuing thereafter, [Plaintiff] created a series of original, visually arresting, highly distinctive two-dimensional drawings, animated video clips and related graphical works collectively identified as the 'Jangle Vision Twins" works' . . . . [whose] central element[s] . . . are androgynous-presenting female characters that are readily

---

[1] Although there is a lone claim for copyright infringement, the CFAC directs the Court to seven registered copyrights. *See* CFAC, Exhs. A-G, Docket Nos. 17-1 – 17-7. Those registered copyrights are for: "Jangle Vision Video," a motion picture; "Jangle Vision Original Face Revised" (previously-titled "Jangle Vision Twin Series") a 2-D artwork; "Jangle Vision Numbered Dot Comic Pixel," a 2-D artwork; "Jangle Vision 4D Scribble Villains," a 2-D artwork; "Jangle Vision Neon Mixtape Series," a 2-D artwork; "Jangle Vision New World Series," a 2-D artwork; and "Jangle Vision American Pixel," a 2-D artwork. *See id.* As an initial note, none of the copyrights are specifically/solely for any "character(s)" that appear in any of those particular works. Even when characters are protectable as distinctive elements of larger copyrighted works, not all characters are copyrightable. *See, e.g.*, *DC Comics v. Towle*, 802 F.3d 1012, 1019 (9th Cir. 2015).
  In any event, for purposes of the present motion, Plaintiff effectively puts all its eggs in the basket of Exhibit B to the CFAC:

> [F]or purposes of the MTD, it is important to explain that the center of gravity remains the infringement in the Infringing Videos of the work entitled "Jangle Twins Series" [*sic*] . . . . The Complaint does allege additional discrete, secondary acts of infringement . . . and also alleges additional copying by Wang from the Registered Works that do not independently rise to the level of actionable infringement . . . . However, the disposition of the MTD is not dependent upon nor even materially impacted by the relative strength or interpretation of these subordinate allegations.

Docket No. 30, at n.8, 9:24-28; *see also id.* at 11:6-26, 12:20-25, 21:22-27, 22:6-7, 22:11-13. As the Court sees it, this is effectively a concession that Plaintiff cannot proceed past the pleadings if it cannot survive an extrinsic test/substantial similarity examination in connection with Exhibit B to the CFAC – *by far* Plaintiff's best case under that analysis relates to that registered work (a fact that Plaintiff implicitly recognizes in the limitation of its efforts revealed in the quotations excerpted/cited above).

1

distinguishable and immediately identifiable by, among other details, the lithe, angular, elongated shape of their bodies, their unnatural postures and their skin-like full body coverings, revealing only their eyes and mouth through openings in the face of the skin." *Id.* ¶ 12. The CFAC includes as "representative images" the following:



*Id.* ¶ 15. Plaintiff alleges that it has obtained various U.S. Copyright Registrations as its Jangle Vision Twins images. *Id.* ¶¶ 13-14.

Defendant Alexander Wang is described as a "world famous fashion designer." *Id.* ¶ 3. Plaintiff alleges that Defendants infringed its copyrights in the Jangle Vision Twins images through their creation of advertisements which included rubber-clad females substantially similar to Plaintiff's Jangle Vision Twins such as the following:



2

*Id.* ¶ 27.

**II. Analysis**

    A. Procedural Standard & Appropriately-Considered Materials

Under Rule 12(b)(6), a court must (1) construe a complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007) (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief).

In its consideration of the motion, the court is generally limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruling on other grounds recognized in Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Nonetheless, "while a court must generally refrain from considering extrinsic evidence in deciding a 12(b)(6) motion, it may [also] consider documents on which the complaint '*necessarily relies*' and whose 'authenticity . . . is not contested.'" *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003) (emphasis added); *see Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."); *see also Steinle v. City & Cty. of S.F.*, 919 F.3d 1154, 1162-63 (9th Cir. 2019); *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1042 (9th Cir. 2015)

3

("'[W]e may consider materials incorporated into the complaint . . . .'") (quoting *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)).

Defendants' motion is founded on the Court's ability to review both the materials Plaintiff asserts are the subjects of its registered copyrights *and* the allegedly-infringing material. Ninth Circuit precedent appears to support this contention regarding the universe of materials that are appropriate for consideration in a case such as this, at this procedural stage. In 1945, the Ninth Circuit observed that "[t]here is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." *Christianson v. W. Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945). Thus, deciding the substantial similarity question at the Rule 12(b)(6) stage is clearly-*permissible*, where *possible*. *See, e.g.*, *White v. Twentieth Century Fox Corp.*, 572 Fed. Appx. 475, 477 (9th Cir. May 2, 2014) (unpublished memorandum disposition affirming dismissal of copyright claim for lack of substantial similarity, asserting that "'[a]lthough the substantial similarity test is often decided on summary judgment or at trial,' courts may determine as a matter of law that works are not substantially similar") (quoting *Gilbert v. New Line Prods., Inc.*, No. CV 09-02231 RGK (RZx), 2009 WL 7422458, at *2 (C.D.Cal. Nov. 16, 2009)); *Dumond v. Reilly*, No. CV 19-8922-GW-AGRx, 2021 WL 733311 (C.D. Cal. Jan. 14, 2021); *Reflex Media, Inc. v. Pilgrim Studios, Inc.*, No. CV 18-2260-GW-(FFMX), 2018 WL 6566561, at *8 (C.D. Cal. Aug. 27, 2018) (stating that "[a] court may dismiss a complaint on a 12(b)(6) motion . . . for failing to satisfy the extrinsic test" and concluding that, in applying the extrinsic test, court can take judicial notice of episodes of both the original and allegedly-infringing series); *Silas v. Home Box Office, Inc.*, 201 F.Supp.3d 1158, 1169 (C.D. Cal. 2016) (concluding that it was appropriate to consider, on Rule 12(b)(6) motion, motion picture trailers, treatment, screenplay, and allegedly offending television series episodes), *aff'd*, 713 Fed. Appx. 626, 627 (9th Cir. Feb. 22, 2018) (affirming, under abuse of discretion standard, consideration of episodes); *Zella v. E.W. Scripps Co.*, 529 F.Supp.2d 1124, 1128 (C.D. Cal. 2007) ("Plaintiffs allege that the show *Rachael Ray*, as an ongoing series, infringes on Plaintiffs' *Showbiz Chefs*, so the Court may properly consider the content of the show as a documentary facts [*sic*] 'whose contents are alleged in [the] complaint.'") (quoting *Branch*, 14 F.3d at 454). There is no reason the

Court is aware of for it to conclude that *Christianson* is not still good law in this Circuit.

Here, Plaintiff does not present any reason why the Court cannot compare Plaintiff's copyrighted materials with the material produced by Defendants that Plaintiff alleges provides the basis for infringement. In fact, quite apart from the question of whether the Court could do so under standard Rule 12(b)(6) rules, Defendant asked that the Court take judicial notice of the allegedly-infringing materials, among other items, and Plaintiff presented no opposition thereto. *See* Docket No. 21. Whether by way of judicial notice, or because the materials are properly-considered pursuant to the Rule 12(b)(6) exceptions discussed above, it is clear to the Court that it may review both Plaintiff's and Defendants' materials in connection with this motion. As a result, the Court grants Defendants' request for judicial notice, at least with respect to exhibits 1-6 thereto.[2]

Plaintiff does argue that substantial similarity is more-commonly resolved at summary judgment (or later), and this very likely is true, but as the above-discussion demonstrates, it is possible to do so in connection with a Rule 12(b)(6) motion as well. *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977) ("*Krofft*"), *overruled on other grounds by Skidmore as Trustee for Randy Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d 1051 (9th Cir.) (en banc), *cert. denied*, 141 S.Ct. 453 (2020), in fact recognized that the extrinsic test used for assessing substantial similarity "may often be decided as a matter of law." *Krofft*, 562 F.2d at 1164. Much more recently, the Ninth Circuit left no doubt on this question:

> Rentmeester contends that dismissal at the pleading stage is rarely appropriate in copyright infringement cases and that he should have been allowed to take discovery before the district court assessed substantial similarity. It is true that dismissal of copyright infringement claims occurs more commonly at the summary judgment stage, but dismissal at the pleading stage is by no means unprecedented. Dismissal is appropriate here because the two photos and the Jumpman logo are properly before us and thus "capable of examination and comparison." Nothing disclosed during discovery could alter the fact that the allegedly infringing works are as a matter of law not substantially similar to Rentmeester's photo.

*Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1123 (9th Cir. 2018) (quoting *Christianson*, 149 F.2d at 203) (omitting internal citations) (citing *Christianson*, among other cases, as

---

[2] Consideration of the other material introduced via Defendants' request for judicial notice is likely unnecessary, at least under the Court's current approach to this motion. The Court therefore refrains from ruling as to those items, at least at this time.

examples of dismissals at the pleading stage), *overruled on other grounds by Skidmore*, 952 F.3d 1051. In short, there is no question that Rule 12(b)(6)-based dismissals of copyright infringement claims may be had in the appropriate circumstances. Whatever a single judge might feel about this being a "virtually unheard of" practice, as expressed in a concurrence in an unpublished memorandum disposition, *see Astor-White v. Strong*, 733 F. App'x 407, 408-09 (9th Cir. 2018) (Wardlaw, J., concurring), that is clearly a dramatic overstatement of the actual "facts on the ground" at the district court level where all the necessary works are properly before the district court.

Plaintiff also asserts that it is especially inappropriate, if not impermissible, where a court is called-upon to compare source and allegedly-infringing material from two different mediums. *See* Docket No. 30, at 18:1-20:19. But, as Defendants accurately observe, Plaintiff has not offered any authority for that proposition.[3]

In sum, there is no reason why the Court is prohibited from assessing the viability of Plaintiff's claims, *as a matter of law*, at this early stage in this litigation.

B. The Manner of Analysis for Plaintiff's Copyright Infringement Claim

To prevail on its copyright infringement claim, Plaintiff "must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 624 (9th Cir. 2010) (quoting *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006) and *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)), *overruled on other grounds by Skidmore*; *see also Skidmore*, 952 F.3d at 1064 (describing the second element as copying "protected aspects of the work"); *Corbello v. Valli*, 974 F.3d 965, 973 (9th Cir. 2020) (same). Beyond this basic, and oft-repeated observation, two years ago the Ninth Circuit, sitting *en banc* in *Skidmore*, clarified the process for analyzing claims of copyright infringement.

*Skidmore* clarifies that there are two separate components to copyright infringement's second prong of "copying protected aspects of the work": "copying" and

---

[3] *Mulcahy v. Cheetah Learning LLC*, 386 F.3d 849 (8th Cir. 2004), a decision (from the Eighth Circuit) reviewing a district court's summary judgment ruling, says nothing about what may or may not be properly-compared at the Rule 12(b)(6) stage. *Castle Rock Entertainment, Inc. v. Carol Pub'g Grp., Inc.*, 150 F.3d 132 (2d Cir. 1998), another summary judgment appeal (from the Second Circuit this time) likewise has nothing obvious to say on that point.

"unlawful appropriation." *Skidmore*, 952 F.3d at 1064. A plaintiff must be able to prove that a defendant copied its work, but it may do so – in the absence of direct evidence on that point – circumstantially via showing a defendant's access to the work and that the two works show similarities probative of copying. *See id.*; *see also Funky Films*, 462 F.3d at 1076 ("Absent evidence of direct copying, proof of infringement involves fact-based showings that the defendant had access to the plaintiff's work and that the two works are substantially similar.") (quotation omitted). "Access is often proved by the wide dissemination of the copyrighted work," including merely by demonstrating that the work is "available on demand." *Skidmore*, 952 F.3d at 1068 (internal citation omitted). A finding of similarity for purposes of demonstrating *this copying requirement* "may be based on the overlap of unprotectable as well as protectable elements." *Id.* at 1064. Almost certainly because it believes it has a strong case for making out this part of a copyright infringement case, Plaintiff makes frequent reference to allegations/facts relevant to this topic in both the CFAC and its Opposition. But Defendants have not relied upon this part of Plaintiff's claim to explain why the claim fails here, so there is no reason for Plaintiff or this Court to spend time on an assessment of it. *See* Docket No. 20, at 12 n.9; *see also Skidmore*, 952 F.3d at 1069 ("[A]ccess . . . in no way can prove substantial similarity.").

In contrast to copying, "unlawful appropriation" requires that works "share *substantial* similarities." *Skidmore*, 952 F.3d at 1064. Substantial similarity is a fact-specific inquiry, but it "'may often be decided as a matter of law.'" *Benay*, 607 F.3d at 624 (quoting *Funky Films*, 462 F.3d at 1076 and *Krofft*, 562 F.2d at 1164). Here, a two-part test is used, applying an "extrinsic test" and an "intrinsic test." *See Skidmore*, 952 F.3d at 1064; *see also Benay*, 607 F.3d at 624 (indicating that, to prevail in an infringement case, a plaintiff must "prove[ ] both substantial similarity . . . under the 'extrinsic test' and substantial similarity . . . under the 'intrinsic test'") (quoting *Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990)). "Both tests must be satisfied for the works to be deemed substantially similar." *Skidmore*, 952 F.3d at 1064. However, a court may not resolve the intrinsic test at this procedural stage. *See Benay*, 607 F.3d at 624; *Swirsky v. Carey*, 376 F.3d 841, 844-45 (9th Cir.2004); *Funky Films*, 462 F.3d at 1077.[4]

---

[4] Plaintiff relies in its brief on a passage from *Krofft* where the court discusses whether a defendant has taken from a plaintiff's work in a way that "wrongfully appropriated something which belongs to the

The extrinsic test "compares the objective similarities of specific expressive elements in the two works. Crucially, because only substantial similarity in protectable expression may constitute actionable copying that results in infringement liability, 'it is essential to distinguish between the protected and unprotected material in a plaintiff's work.'" *Skidmore*, 952 F.3d at 1064 (quoting *Swirsky*, 376 F.3d at 845) (omitting internal citation). It is this challenge that Defendants present in their Rule 12(b)(6) motion – one which, if Plaintiff is not able to overcome it, can spell the end for Plaintiff's claims of copyright infringement.

"The extrinsic test is an objective test based on specific expressive elements." *Benay*, 607 F.3d at 624 (quoting *Kouf v. Walt Disney Pictures & Tele.*, 16 F.3d 1042, 1045 (9th Cir. 1994) (quotation omitted)); *Swirsky*, 376 F.3d at 849 n.15. Again, however, "[a] court must take care to inquire only whether the protect[able] elements, standing alone, are substantially similar." *Benay*, 607 F.3d at 624 (quoting *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (emphasis and quotation omitted)). Thus, "[t]he extrinsic test requires a three-step analysis: (1) the plaintiff identifies similarities between the copyrighted work and the accused work; (2) of those similarities, the court disregards any that are based on unprotectable material or authorized use; and (3) the court must determine the scope of protection ('thick' or 'thin') to which the remainder is entitled 'as a whole.'" *Corbello*, 974 F.3d at 974 (quoting *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994)).

A key component of the necessary analytical inquiry – identifying one example of what qualifies as "unprotectable elements," *Rentmeester*, 883 F.3d at 1118 – is that "[c]opyright law only protects expression of ideas, not the ideas themselves." *Benay*, 607 F.3d at 624 (quoting *Cavalier*, 297 F.3d at 823). Moreover, "[f]amiliar stock scenes and themes . . . are not protected." *Id.* at 624-25 (quoting *Cavalier*, 297 F.3d at 823); *see also Skidmore*, 952 F.3d at 1069 (noting that copyright "does not protect every aspect of a work; ideas, concepts, and common elements are excluded"); *Corbello*, 974 F.3d at 973-75. So, "[t]o determine whether similarities result from unprotectable expression, analytic

---

plaintiff." *See* Docket No. 30, at 10:12-13. But that passage from *Krofft* dealt with consideration of the intrinsic test, not the extrinsic test that a court may properly-apply at the Rule 12(b)(6) stage. *See Krofft*, 562 F.2d at 1165.

8

dissection of similarities may be performed. If this demonstrates that all *similarities* in expression arise from use of common ideas, then no substantial similarity can be found." *Corbello*, 974 F.3d at 974 (quoting *Data E. USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 208 (9th Cir. 1988)).

Thus, the Court must first attempt to determine what "protectable elements" Plaintiff believes there are in its copyrighted works and that also appear in Defendants' allegedly-infringing material. *See Corbello*, 974 F.3d at 974. To attempt to do this, the Court has examined Plaintiff's allegations in the CFAC and its arguments in opposition to this motion for what Plaintiff asserts are "similarities," and has looked also for why or how Plaintiff believes any such similarities are "protectable." In sum, Plaintiff has identified what it believes are similarities in various elements between its copyrighted material and the targeted, allegedly-infringing, work of Defendants. But it has given the Court very little assistance in providing a basis for it to conclude, as part of the necessary "analytic dissection," that those elements are protectable. The following discussion demonstrates as much.

In the CFAC, Plaintiff never directly-addresses this issue of *protectable* elements, though there are passages that come close to at least *suggesting* something in this regard. For instance, in paragraph 12 of the CFAC, Plaintiff asserts the following:

> Ms. Diroma [Plaintiff's "Managing Member, creator, and artistic driving force"] created a series of original, visually arresting, highly distinctive two-dimensional drawings, animated video clips and related graphical works collectively identified as the "Jangle Vision Twins" works. The central element of the Jangle Vision Twins collection of works are androgynous-presenting female characters that are readily distinguishable and immediately identifiable by, among other details, the lithe, angular, elongated shape of their bodies, their unnatural postures and their skin-like full body coverings, revealing only their eyes and mouth through openings in the face of the skin. The Jangle Vision Twins characters body coverings, and other images and designs in the Jangle Vision Twins works, are presented in a collection of nine specific colors (the "Jangle Vision Palette") chosen by Ms. Diroma.

CFAC ¶ 12. This could be taken as suggesting that Plaintiff believes "androgynous-presenting female characters" are protectable, or at least ones with "lithe, angular, elongated" body shapes, or those configured in "unnatural postures," or those with "skin-like full body coverings, revealing only their eyes and mouth through openings in the face

9

of the skin." Additionally, Plaintiff may intend to identify what it has defined as the "Jangle Vision Palette" as a protectable element.

Supporting this reading, in describing Plaintiff's first encounter with what she believes Defendants copied, the CFAC then refers to Defendants' advertisement with "two androgynous-presenting female characters" with similarities including "lithe, angular, elongated bodies in unnatural postures, in pink skin-like full-body coverings revealing only their eyes and mouth through openings in the face of the skin." *Id.* ¶ 26. The CFAC continues on to assert that "[a]lso substantially similar to expressive elements in the Registered Works, the female characters in Defendants' advertisement were framed within circular environments. Specifically, they were depicted lounging in a round martini-glass-shaped pool." *Id.*; *see also id.* ¶ 30. We have then another suggestion, at least, that being "framed within circular environments" constitutes a protectable element. Plaintiff then appears to sum up its concern in this regard:

> These animated characters and how they are displayed in these animated advertisements embody and display multiple identifiable expressive elements that are taken from and that are substantially similar to corresponding elements of original copyrighted artistic authorship embodied and displayed in the Registered Works, including but not limited to the substantially similar elements that are discernable in the images excerpted from Defendants' animated characters and animated advertisements reproduced in this Complaint and its Exhibits.

¶ 31; *see also* ¶ 42 (referring to "additional advertisements featuring lithe female figures clad in black 'skins' in exotic poses, which . . . infringe those expressive elements of the Jangle Vision Twins characters"); *id.* ¶ 43 (alleging misappropriation of "Plaintiff's post-modern, universal, chameleon 'Universal Woman' manifested in the Registered Works"); *id.* ¶ 51 (referencing "the highly distinctive, ultra-modern, memorable Jangle Vision Twins images" and Defendants' display of characters "in circular pools, intentionally meant to invoke the same circular environment" in which Jangle Vision Twins were presented in several works); *id.* ¶ 56 (alleging misappropriation of "the essence, the themes and the visual elements of the entire portfolio of Jangle Vision works, concept and brand").

Plaintiff also generally refers to "the copyrighted expression" contained in what it refers to as a "Jangle Vision American Pixel work." CFAC ¶ 35. In the CFAC itself, however, Plaintiff does not explain what that "copyrighted expression" consists of, at least in terms of protectable elements – as explained above, the key concern when it comes to

10

substantial similarity under the extrinsic test for copyright infringement.

The CFAC then returns to the topic of color, discussing the "Jangle Vision Neon Mixtape Series," which "consists of nine panels, each depicting the face of a Jangle Vision Twin within a circular frame." CFAC ¶ 39. Plaintiff explains that "[o]n eight of the nine panels . . . the respective Jangle Vision Twin image is set against a background displaying one of eight specific colors included in the Jangle Vision Palette." *Id.*; *see also id.* ¶ 40 (identifying the location of the ninth color in the Jangle Vision Palette). Plaintiff refers to Defendants' "additional styles and models of rhinestone handbags and . . . additional ancillary rhinestone embedded products" which are "offered in a collection of nine separate colors that exactly copy and consist of each of the nine specific colors that comprise the copyrighted Jangle Vision Palette, and no other color or colors." *Id.* ¶ 41. Plaintiff believes this to be an "unauthorized appropriation and copying of the entire Jangle Vision Palette." *Id.*; *see also id.* ¶ 53.

In the end, hints in its allegations exist about what it is Plaintiff believes is protectable in its copyrighted works. But Plaintiff never does come right out and say as much in the CFAC. Once-challenged via the motion to dismiss, the Court would expect Plaintiff to more-overtly address the issue in its Opposition to the motion.

Though it unquestionably recognizes the task before it when challenged on the topic of substantial similarity, *see* Docket No. 30, at 7:15-17 ("THE COMPLAINT COMPETENTLY ALLEGES UNLAWFUL COPYING OF PROTECTABLE EXPRESSION IN PLAINTIFF'S REGISTERED WORKS"), Plaintiff's Opposition to the instant motion is similarly-vague about what exactly the "protectable elements" might be in its copyrighted works. In truth, much of its argument seems intended to avoid that basic, crucial, question. In its opening presentation, the Opposition similarly refers to "highly stylized, androgynous-presenting female characters" which are "readily identifiable by, among other expressive details, lithe, unnaturally angular bodies in various colored 'skins,' with only their eyes and mouths visible through the face of the skin." Docket No. 30, at 1:14-17; *see also id.* at 2:22-3:1. Plaintiff follows that up with references to the "unique, original expressive essence" of its characters, *id.* at 2:18-19, Defendants' alleged "exact[]

11

match[ing]" of Plaintiff's "same palette of colors,"[5] *id.* at 3:11-14, and its "copyrighted post-modern, chameleon 'Universal Woman' image embodied and expressed" in the Jangle Vision Twins, *id.* at 3:16-18. *See also id.* at 4:25-26 ("[T]he female characters in the Infringing Videos have copied the very essence of the expressive elements that define the Jangle Vision Twins."); *id.* at 5:9 (referencing "the essence" of Plaintiff's characters); *id.* at 8:21-22 (referring to "a unique visualization of the 'Universal Woman' which communicates to the viewer a powerful, androgynous-presenting female figure"); *id.* at 9:9-10 (referencing "the stylized and evocative female figure that Plaintiff created"); *id.* at 12:12 (referencing alleged infringement "of the Jangle Vision color palette"); *id.* at 20:12-13 (referencing "the 'qualitative essence' of the 'Universal Woman' theme[] as it is embodied in those expressive details that are displayed in Plaintiff's works").

Plaintiff's Opposition then jumps to referring, in a shorthand way, to a topic Plaintiff must have presumed its earlier efforts put-to-rest: "expressive elements." Docket No. 30, at 11:10-14, 11:25-26. But at this point in time the Court is still left largely-guessing about what Plaintiff believes those might be.

Then, departing from what is included in the CFAC, the Opposition appears to attempt to – for the first time – put a more-precise description together for what Plaintiff believes is protectable in its expressions of the Jangle Vision characters:

> The list of substantial similarities alleged in the Complaint can be expanded to include additional objective expressive choices common to the Jangle Vision Twins and the Infringing Videos: essentially identical almond shaped eyes; same eyebrow color and coverage; same lip shape and bright red lipstick color; unnatural disproportionate body shapes; triangular shaped torso; and unnaturally positioned arms.

Docket No. 30, at 14:14-19. Finally, the Opposition further references other "expressive elements" in various of its works covered by this lawsuit. *See id.* at 14 n.10 ("Another expressive element that is featured in the Jangle Vision Works and copied in the Infringing Video is the repeated presentation of the Jangle Vision Twin characters in circular frames."); *see id.* at 15 n.11 (referencing "Wang's copying of the original, unusual display of the flag design with pixilated rows of color"); *id.* at 22:9-11 (describing as "expressive elements" the "highly pixilated depiction of the American flag stripes and fields in the

---

[5] As Defendants note in their motion, Plaintiff has not registered a copyright for any "palette" of colors. *See* Docket No. 20, at 23:22-28; Docket Nos. 17-4, 17-5.

12

Jangle Vision work").

As a result of all this dancing-around on the relevant subject of protectable elements that the process of analytic dissection requires under the extrinsic test, the Court is still left effectively guessing just which elements Plaintiff believes qualify. The Court would therefore expect Plaintiff to provide more clarity on this topic, both by giving the Court an explicit list of just which elements it believes are protectable, and by supplying the Court with specific cases that support such an assertion. Without such support, the Court would be inclined to conclude, as Defendants argue, that it appears Plaintiff is arguing for copyright protection of one or more *ideas*, something that simply is not permissible under this nation's copyright laws.

Before Plaintiff goes through with that endeavor, however, it may make more sense for Plaintiff to first attempt to explain why the Ninth Circuit's *Rentmeester* decision – addressed briefly in Defendants' motion, *see* Docket No. 20, at 19:2-13, and not at all (at least in terms of the Ninth Circuit's *analysis* in that case) in Plaintiff's Opposition – does not, in effect, spell the end for Plaintiff's hopes here (without the need to enter into any *detailed* examination of all the differences between Defendants' works and Plaintiff's registered copyrights).[6] In *Rentmeester*, the Ninth Circuit affirmed the district court's Rule 12(b)(6) dismissal of a copyright infringement claim asserting that the defendant's photograph and trademark logo had infringed the copyright of the plaintiff's photograph, all of which had, as their main subject, Michael Jordan, floating through the air, on the way to – if then-past and then-future practice is any indication – dunking a basketball. The district court had done so based upon the same extrinsic test substantial-similarity inquiry as is presented by Defendants' motion here.

As the Court would conclude here (at least at this stage), the plaintiff's work in that case was "highly original." *Rentmeester*, 883 F.3d at 1115. As the Court may also conclude, similarly, the defendant's work, in at least certain respects, was "obviously inspired by" the plaintiff's photograph. *See id.* at 1116. Finally, as in *Rentmeester*, the Court would be willing to conclude, for present purposes, that Plaintiff's works – if there

---

[6] The *Rentmeester* decision, apart from the limited basis on which it was overruled by the Ninth Circuit's *en banc* decision in *Skidmore*, appears to remain good law in this Circuit.

13

are protectable elements in them, *see Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 770 (9th Cir. 2018) (stating that "a collection of unprotectable elements . . . may earn 'thin copyright' protection") – are entitled to "broad rather than thin protection" because "the range of creative choices available to" Plaintiff in presenting the subject matter in its works is broad, with "very few of [Plaintiff's] choices . . . dictated by subject matter or convention." *Rentmeester*, 883 F.3d at 1120. On this last point, the Court agrees with Plaintiff that "there are countless different ways in which the 'idea' of a woman in a body suit with a mask may be artistically expressed." Docket No. 30, at 4:19-21.[7]

*Rentmeester* explained that visual works such as photographs "can be broken down into objective elements that reflect the various creative choices the photographer made . . . – choices related to subject matter, pose, lighting, camera angle, depth of field, and the like." *Id.* at 1119. "But none of those elements is subject to copyright protection when viewed in isolation," even where "a photographer creates wholly original subject matter by having someone pose in an unusual or distinctive way." *Id.*

"What *is* protected by copyright is the photographer's selection and arrangement of the photo's otherwise unprotected elements." *Id.*; *see also Skidmore*, 952 F.3d at 1074 ("To be sure, a copyright plaintiff may argue 'infringement . . . based on original selection and arrangement of unprotected elements.'") (quoting *Metcalf v. Bochco*, 294 F.3d 1069, 1074(9th Cir. 2002)); *Metcalf*, 294 F.3d at 1074 ("The particular sequence in which an author strings a significant number of unprotectable elements can itself be a protectable element.").[8] Because of this limitation of what could be considered protectable in the photographer's work – and despite the conclusion that at least certain aspects of the

---

[7] The Court finds the photograph in *Rentmeester* more-analogous on this point than the "attractive young[] female fashion doll with exaggerated proportions" at issue in *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 915 (9th Cir. 2010), Defendants' preferred comparator for purposes of the topic of thin versus broad protection.

[8] This path to demonstrating infringement is seemingly very narrow. "We have extended copyright protection to 'a combination of unprotectable elements . . . only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship.'" *Skidmore*, 952 F.3d at 1074 (quoting *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003)); *id.* ("[W]hat a selection and arrangement copyright protects is the *particular* way in which the artistic elements form a coherent pattern, synthesis, or design."); *see also Corbello*, 974 F.3d at 974 n.2 ("There is no viable arrangement and selection argument here, both because the unprotectable elements that appear in both the Play and the Work are not 'numerous enough' and because, even if there were an original 'synthesis' of those elements in the Work, it is not present in the Play. . . . 'Without [a particular, original] arrangement, there is no liability for taking ideas and concepts from the plaintiff's work, even in combination.'") (quoting *Skidmore*, 952 F.3d at 1074-75).

14

photographer's work were highly original, the defendant's efforts were "obviously inspired by" the photographer's work (such that the two photos were "undeniably similar in the subject matter," *Rentmeester*, 883 F.3d at 1121), and the photographer's work was entitled to "the broadest protection a photograph can receive" – the Ninth Circuit resolved the substantial similarity question *against* the plaintiff because the defendant's photographer, like the plaintiff, had "made his own distinct choices" in the "selection and arrangement of the elements" in the resulting work. *See id.* The defendant's photographer's choices, the Ninth Circuit summed up, "produced an image that differs from Rentmeester's photo in more than just minor details." *Id.* These differences included the position of Jordan's limbs in the competing photographs, and material differences in "the arrangement of the elements within the photographs." *See id.* at 1121-22. In sum, what was left were "similarities in general ideas or concepts." *Id.* at 1122-23.

If the district court appropriately dismissed the copyright infringement claims in *Rentmeester*, it is hard to understand how Plaintiff's claims can survive the instant challenge. The Court can fully agree with Plaintiff that Defendant's accused works – at least the works featuring the "skin"-clad androgynous-presenting female figures – were "inspired by," or even similar to, in a layman's sense,[9] the characters in Plaintiff's works. But differences are manifest and obvious, just as in *Rentmeester*, in terms of *at the very least*, positioning, overall-environment, and details of the "skins" and what they do and do not reveal/expose. Plaintiff cannot copyright the idea of an androgynous female clothed in what appears to be some sort of latex skin, with openings for various facial features. *See also, e.g.*, *Benay*, 607 F.3d at 625 (agreeing with district court that while, on cursory review, similarities in the case "may appear substantial, a closer examination of the protectable elements . . . exposes many more differences than similarities" and "[t]he most important similarities involve unprotectable elements. . . . Stripped of these unprotected elements, the works are not sufficiently similar to satisfy the extrinsic test.").

C. Conclusion

---

[9] Even assuming "numerous third parties exposed to the Infringing Videos immediately recognized them as a copy of the Jangle Vision Twins," *see* Docket No. 30, at 7:7-8, that is not relevant when it comes to application of the extrinsic test. There is no allegation that those individuals were employing the analytic dissection appropriate under the extrinsic test (nor would their opinions in that regard have been controlling with respect to the Court's operation of that task, even if they had been).

15

"[A] plaintiff who cannot satisfy the extrinsic test necessarily loses . . . because a jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests." *Kouf*, 16 F.3d at 1045. In other words, if Plaintiff cannot explain why *Rentmeester* does *not* resolve the case against Plaintiff's interests, this case is at an end.[10] Even if Plaintiff can explain its way around *Rentmeester*, however, the Court would ask Plaintiff to specifically identify what protectable elements are present in its works, providing case authority for the proposition that such an element/elements is/are protectable. The Court will discuss at oral argument whether it makes sense to have the parties address both these topics simultaneously, or if they should first simply focus their efforts on *Rentmeester*.

---

[10] Plaintiff has not requested an opportunity to amend if Defendants succeed on this motion. Indeed, there would appear to be no basis to permit such amendment, considering that the Court would have assessed the works in question on their merits in terms of the extrinsic test, and no amendment will change what is reflected in those materials.

16